## McDowell vs. Laev.

CONTRACTS. (1) *Agreement under seal to do some act for benefit of third party; action will lie by third party.* (2, 3) *Contract construed; whether a present assignment or a promise to assign.* (4) *The assignment being executed, no question of delivery to assignee as a condition precedent arises.*

PLEADING. (5) *Matters of defense need not be negatived in complaint.*

1. It is well settled in this state that where one person, for a valuable consideration, engages with another, *by simple contract*, to do some act for the benefit of a third person, the latter may maintain an action for a breach of such engagement. *Putney v. Farnham,* 27 Wis., 187, and other cases in this court. And the same rule is here extended to the case of a promise in an *instrument under seal.*

2. By the terms of the instrument sued on, H. "agrees to assign and set over unto L. all white pine logs and all hemlock logs now lying and situate near or about what is known as ' Hall's Portable Mill,' and owned by said H., and also agrees to turn over to said L. and lease to him said portable mill and material," etc. Upon examination of the whole instrument, regard being had to the subject matter thereof: *Held,* that it was intended to be, and was in effect, an assignment *in præsenti,* and not merely an agreement to assign and lease at a day then future.

3. This construction of the instrument is not forbidden by a clause therein fixing the price of the logs " as scaled," although they had not been scaled at the date of the instrument. It must be presumed that the

parties had some understanding or arrangement respecting the scaling of the logs after they came into the possession of L.

4. The contract of sale being therefore an *executed* one, constituting a present transfer of the logs to L., so as to vest the title and right of possession immediately in him, no question arises as to the delivery of the logs by H. to L., as a *condition precedent* to L.'s liabilty to pay for them.

5. In a complaint against L. for a breach of such contract, *Held*, that if H. wrongfully regained, or took and withheld, the possession of the logs, to L.'s damage, or if the title failed, if the quantity proved deficient, or L. was dispossessed or interrupted by his creditors in the manufacture of the logs into lumber, or if there was otherwise any violation of the express or implied covenants of H., by which L. was injured, — these were matters of *defense*, to be set up in the *answer*, and need not be negatived in the complaint.

APPEAL from the Circuit Court for *Oconto* County.

*Richard McDowell* brought his action against *Laev* to recover the indebtedness originally due to plaintiff from one Hall, but which *Laev* had agreed to pay in a written agreement under seal, entered into between himself and Hall. By the terms of the agreement, as set forth in the complaint, Hall, as party of the first part, agrees to assign and set over to *Laev*, party of the second part, " all white pine logs and all hemlock logs now lying and situate near or about what is known as Hall's Portable Mill, and owned by him, the said first party, and also agrees to turn over to said second party and lease to him said portable mill above mentioned, and all materials, machinery, horses, oxen, mules, wagons, cars, tram road, boarding house and furniture, and everything now used for the purpose of operating said mill, with the right to use and operate the same until such time or times as will be necessary to manufacture said logs into lumber, and until the same shall be manufactured into lumber by the use and operation of said mill; and by these presents the said mill and all things above mentioned are leased to said party of the second part for the use and purposes before mentioned; provided that said lease shall not    *    *    be in force after the 15th day of November, 1873, unless consent to

McDowell vs. Laev.

that effect shall be had and obtained. In consideration of which assignment and setting over of said pine and hemlock logs aforesaid, and said lease as aforesaid, said second party agrees to pay said first party therefor six dollars for every thousand feet of said pine logs, and three dollars and seventy-five cents for every thousand feet of said hemlock logs, as scaled, to be made as follows : Said second party agrees to pay off the present indebtedness of said first party to the employees of said first party engaged in and about the manufacture of lumber at said mill, to an amount not exceeding the amount of one thousand dollars ; said amount to include a present indebtedness of said first party to one *Richard McDowell* of three hundred and sixty dollars ; said amount to include, also, a present indebtedness of said party to one John McDowell of one hundred dollars. As a further payment for said logs, and as consideration therefor and for said lease, the present indebtedness, and all of the same, of said first party to said second party is to be allowed by said first party to said second party as part payment therefor. Six hundred dollars is also to be paid to said *Richard McDowell* by said second party in the month of July, 1873, for said first party, out of the price of said pine and hemlock logs." The agreement also provided for the making of other payments from time to time, with a proviso that if the second party should be threatened with any interruption in the manufacture of the logs into lumber, or to his possession of any of the property, by reason of any outstanding obligations of the party of the first part, the second party might withhold any money due under the contract, and apply it in payment of such obligations. It also contained certain stipulations concerning repairs, the purchase of materials and machinery and other points not material to an understanding of the opinion. The complaint admitted the payment by *Laev* to plaintiff of $360, and claimed the remaining $600, which *Laev*, by the terms of the agreement with Hall, had promised to pay.

A demurrer to the complaint, as not stating a cause of action, was sustained; and the plaintiff appealed.

*W. H. Webster*, for appellant, to the point that it was compe-- tent for *McDowell* to bring this action, cited *Kimball v. Noyes*, 17 Wis., 695; *Cotterill v. Stevens*, 10 id., 422; *Wolf v. Washburn*, 6 Cow., 261; *Sunderland Marine Ins. Co. v. Kearney*, 16 Q. B., 925; R. S. 1858, ch. 107, sec. 2, subd. 2. It is manifest from the agreement itself, that it was intended by the parties as an absolute bill of sale of the logs and as an absolute lease of the mill and its paraphernalia. The words, " the first party agrees to assign and set over unto the said second party all white pine and hemlock logs," taken in connection with the words, "in consideration of which assignment and setting over of said pine and hemlock logs aforesaid," show plainly that such was the intention of the parties, and in fact render the contract a bill of sale, vesting the title to the logs at once in respondent. *Emery v. Hitchcock*, 12 Wend., 156. The mill was leased to manufac- ture the logs; the logs were near to and about the mill; and the fact that no time is mentioned for their future delivery, shows that the parties intended the logs to become. the prop- erty of respondent upon the contract being executed. The complaint therefore shows that respondent's liability had become fixed, and was only liable to the lapse of time necessary to ma- ture his obligations.

*A. Reinhart, contra*, contended that the complaint was defect- ive because it did not show that the logs were ever scaled and received by defendant, and, for aught that appears in the com- plaint,, the agreement may never have been consummated by scaling and delivering the logs. The agreement is not an ab- solute sale of the logs, but an agreement to assign them in fu- ture. There was some act remaining to be done; the logs were to be scaled to determine their quantity; and so long as there remains anything to be done on the part of the seller, the title does not pass. Again, there is no allegation in the complaint that Hall has performed any of the covenants in the agreement

to be by him performed, and even Hall himself could not re-
cover money under the contract without alleging performance
of the covenants on his part; yet the plaintiff, a stranger to
the agreement, seeks to recover money under it without any
allegations as to performance by Hall of his covenants.

DIXON, C. J.  It is well settled in this state, that when one
person, for a valuable consideration, engages with another, by
simple contract, to do some act for the benefit of a third, the
latter, who would enjoy the benefit of the act, may maintain
an action for the breach of such engagement.  *Cotterill v. Ste-
vens*, 10 Wis., 422; *Cook v. Barrett*, 15 id., 596; *Kimball v.
Noyes*, 17 id., 695; *McClellan v. Sanford*, 26 id., 595; *Putney v.
Farnham*, 27 id., 187.

The question whether this principle extends beyond mere
simple contracts, or is applicable to contracts under seal, is in-
volved in more doubt, and is one upon which the courts seem
not to be agreed.  Whilst it has sometimes been decided that
the principle does not so extend, it may also be true that the
opposite has never been directly adjudicated, though opinions
to that effect have been expressed.  Such was the opinion ex-
pressed by Mr. Justice PAINE in *Kimball v. Noyes*, *supra*, which
seems to have been sustained by the case of *Keeler v. Insurance
Co.*, 16 Wis., 523.  The reasoning of Mr. Justice PAINE is very
clear and satisfactory, and we feel little hesitation in adopting
his views as correct in the law.  Certainly upon the doctrine
held in *Carnegie v. Morrison*, 2 Met., 381, 396, and in *Brewer v.
Dyer*, 7 Cush., 337, 340, that the law, operating upon the act
'of the parties, creates the duty, establishes the privity, and im-
plies the promise and obligation on which the action is founded,
there can be no good reason assigned for withholding contracts
under seal from the operation of the principle.  We accord-
ingly hold that there is no objection to this action being main-
tained by the plaintiff against the defendant, although the
promise or agreement entered into by the defendant with Hall

for the benefit of the plaintiff was in the form of a covenant or contained in an instrument under seal.

The next question to be considered is, whether the assignment of the logs by Hall to the defendant was executed or executory, — whether it was a present transfer of the property to the defendant, so as to vest the title and right of possession immediately in him by the terms of the instrument itself, or merely an agreement to transfer it in the future. If the former was the intention of the parties, and such be the true construction of the contract, then no question as to any condition precedent to be performed by Hall, or of the performance by him of any concurrent act or acts, arises in determining the liability of the defendant upon the contract. If the title to the property passed at once to the defendant on execution of the contract, then the consideration for his covenants moved at that time, and he was henceforth liable upon and must perform them, unless he could show some breach or failure on the part of Hall which would operate to excuse. No question of the delivery of the logs by Hall to the defendant, as a condition precedent to the liability of the defendant to pay for them according to the terms of the agreement, could come up, for the reason that the presumption or the fact, as ascertained from the agreement itself, is, that the possession passed by the agreement or concurrently with the execution of it, and as a necessary and component part of the completed act of sale of which the agreement is the evidence. In such case, if the vendor, Hall, wrongfully regained or took and withheld the possession of the logs to the damage of the defendant, or if the title failed or there was otherwise any violation of the express or implied covenants on the part of the vendor by which the defendant was injured, or if the quantity of the logs proved to be less than was estimated or believed by the parties at the time of sale, and less than enough to meet the fixed sums agreed to be paid, or if the defendant was dispossessed or interrupted in the manufacture of the logs into lumber by any of the creditors of

Hall, these would be matters of defense to be stated in the answer, and not things in the nature of conditions precedent, to be set forth and performance averred or violations negatived in the complaint.

The language of the agreement was, that Hall, the party of the first part named in it, " agrees to assign and set over unto the said second party all white pine logs and all hemlock logs now lying and situate near or about what is known as 'Hall's Portable Mill,' and owned by him, the said first party, and also agrees to turn over to said second party and lease to him said portable mill above mentioned, and all materials," etc.    An examination of the terms of the instrument and of the various provisions contained in it, regard being at the same time had to the subject matter of it, satisfies us that it was an assignment and lease *in præsenti* which was intended, and that such was its effect.    Such appears to have been the intent of the parties to be gathered from the whole instrument, and especially the stipulations in it respecting the payment of the consideration by the defendant.    The payment of the employees of Hall about the mill, together with $360 to the present plaintiff (heretofore paid), was to be a present one.    The other sums were to be paid within fixed times after the date, and not from the date of any future assignment and lease.

No clause in the agreement tends to sustain the opposite conclusion, unless it be that fixing the price of the logs per thousand feet, " as scaled."    It is urged that no title was to pass until the scaling took place.    No provision was made in the contract as to the time, place or manner of scaling, or the person or persons by whom it was to be done.    We are not informed whether the logs were to be scaled before or at the time of sawing.    Perhaps it was impracticable or impossible to scale them before they were sawed, or at the time the contract was made.    At all events, the contract is silent upon this subject, and the presumption must be that the parties had some verbal or other understanding or arrangement respecting the

scaling after the logs came into the possession of the defendant. This is not a circumstance which can change the construction that the instrument must otherwise receive.

Cases in which terms like those of the instrument before us, "agrees to assign and turn over," although in strict grammatical sense perhaps denoting future action, have been held to operate *in præsenti* and to be words of present sale, or executed and not executory agreements, are not unfrequent. Besides *Emery v. Hitchcock*, 12 Wend., 156, cited by counsel, several other decisions are referred to in *Orton v. Noonan*, 27 Wis., 286, 288, 289. In the present case, the whole instrument and each of the provisions contained in it being considered, the words implied a present sale of the logs and an immediate demise of the mill. They implied also a delivery of the logs, and that immediate possession was given of the mill ; and consequently the case presents no question of condition precedent, the performance of which should have been averred, and the complaint states a good cause of action.

The order sustaining the demurrer to the complaint must therefore be reversed, and the cause remanded for further proceedings according to law.

*By the Court.* — It is so ordered.