## Kollock vs. Parcher and others.

*April 25 — May 10, 1881.*

STATUTORY LIEN ON LOGS, etc. *(1) Meaning of "supplies." (2) Meaning of "timber."*

CONTRACTS. *(3) Covenant on sale by one having apparent title. (4) Suit by A. on promise made to B.*

EVIDENCE. *(5) Proof and admission of copy of contract.*

1. In that part of sec. 3330, R. S. (as amended by sec. 1, ch. 167, Laws of 1879), which applies to the county of Marathon, and provides for a lien in favor of persons furnishing supplies to the men engaged in getting out logs and timber in that county, the word "supplies" includes the board of the men, even when furnished at a hotel in a city several miles from the place where they were at work, when the charges for such board are reasonable for men so engaged.
2. The word "timber" in said statute includes railroad ties.
3. Where persons who have the apparent title to chattels, execute a bill of sale of them with a covenant to pay all liens upon them, the real owner consenting to the sale and permitting the consideration money to be paid to such vendors, they cannot escape liability upon their covenant on the ground that their interest in the property at the time of the sale was only that of mortgagees.
4. It is the settled law of this state, that the person for whose benefit a promise is made may maintain an action thereon in his own name. Thus, plaintiff, having a lien·upon timber, may sue upon defendants' covenant to pay such lien, made with third persons who took title to the timber subject to the lien.
5. Where the copy of a written contract is not so certified as to entitle it to admission in evidence under the statute, it may still be admitted, upon proof of its correctness by the oral testimony of the person who made it, where the objection that the original should be produced is overcome or waived; and such objection is waived when not distinctly taken.

APPEAL from the Circuit Court for *Marathon* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought to recover of the defendants the amount of certain board bills which were due to the plaintiff for boarding several men whilst in the employ of one H. I. Waller, and at work for him in getting out a large quantity of railroad ties, which said Waller had contracted to get out·

and deliver to one Cash, on the line of the Wisconsin Valley Railroad. The evidence shows that before the ties were delivered to Cash according to the contract, Waller had given to the defendants a bill of sale of the same to secure them for certain claims for supplies and advances they had made to him whilst getting out the ties, and that afterwards, by mutual agreement between the said Waller and the said defendants, and in consideration of the payments agreed to be made to said defendants, they sold the said ties to Cash, and gave Cash a bill of sale, of which the following is a copy:

"'Memorandum of agreement made the 11th day of December, 1879, by and between Messrs. *Parcher, Manson & Fernald*, of Wausau, Wis., parties of the first part, and W. H. H. Cash, of New Lisbon, Wis., party of the second part.

"'Witnesseth: Whereas H. I. Waller sold and agreed to deliver to said W. H. H. Cash certain railroad ties along the grade of the Wisconsin Valley Railroad, between Wausau and Jenny, and has so delivered somewhere about 6,900 ties, and is yet to deliver 1,000 more or over within ten days from this date; and whereas the said *Parcher, Manson & Fernald* have furnished said Waller supplies, etc., during the getting out of said ties, and have recently taken a bill of sale of said ties of said Waller; and whereas said Cash has advanced and become liable for various sums of money on account of said ties; and whereas said Waller owes other divers persons various sums of money on account of making and delivering to said Cash said before-mentioned ties: Now, therefore, the agreement is that Cash shall pay said *Parcher, Manson & Fernald* for said ties, by request of said Waller, at the rate of seventeen cents per tie for all accepted ties which may have been distributed properly on grade aforesaid, and sixteen cents per tie for all which may be accepted within ten days from date, piled along grade at suitable place to load on cars, first deducting the amounts already paid or assumed by said Cash

on account of said ties from the whole amount due or to become due thereon; said Cash to pay $500 cash this date, the receipt whereof is hereby acknowledged by the parties of the first part, and the remainder which may be found due to be paid when balance of ties are so on and accepted. In consideration of the foregoing agreement and payment, said *Parcher, Manson & Fernald* hereby agree to pay all persons who may make, file or have any legal lien on or against said ties, or any of them, for work or labor performed, supplies furnished, or from any cause whatever; and they hereby agree and bind themselves, in consideration of said payment, to hold said Cash harmless from any or all liens, suits, judgments, costs or trouble which may arise by reason of any legal claims of any other party against said ties, and will account faithfully to said Waller for all disbursements and balances which may become due said Waller or others on said ties.

"'Parcher, Manson & Fernald.

"'W. H. H. Cash.'

"It was upon the provision made in this contract, by the defendants, 'to pay all persons who *may make, file or have any legal lien on or against said ties, or any of them, for work or labor performed, supplies furnished, or for any cause whatever*,' that the plaintiff claimed the right to recover of the defendants the amount of his board bills for the board of men, who, at the time such board was furnished, labored for Waller in getting out said ties. Defendants resisted the claim mainly on the ground that it was not a legal lien on the ties under the statute, and therefore was not covered by the terms of the contract."

The plaintiff had a verdict and judgment; and defendants appealed from the judgment.

For the appellants there was a brief by *James & Crosby*, and oral argument by *M. A. Hurley*.

For the respondent there was a brief by *Eldred & Grace*, and oral argument by *Mr. Grace*.

TAYLOR, J.   The evidence shows that the plaintiff kept a hotel in the city of Wausau, several miles from the place where the men were at work on the ties at the time he furnished them board.   There is no claim made that the charges for board were unreasonably large for men laboring as they were at the time.   It is claimed by the appellants that board furnished laboring men at a hotel in the city, at a considerable distance from the place where they were at work, is not within the meaning of the statute which gives a lien for supplies. We are not disposed to hold that a hotel-keeper would have a lien for such board if his charges were unreasonably large considering the employment the men were engaged in, and out of proportion when compared with the usual charges for board furnished men in like employments.   We are not prepared to say that a man who was at work in getting out logs or timber of any kind could board at a hotel, where his daily charge for board would be more than his daily earnings, and make such charge for his board a lien upon the timber as against the owner thereof.   We think, however, that under the statute as it was when these board bills were made, the fact that the board was furnished by a hotel-keeper does not of itself defeat a lien therefor, when the charges for the same are reasonable under all the circumstances.   In this case there is, in fact, no evidence which shows that the charges of the plaintiff were unnecessary or out of proportion, when considered with reference to the earnings of the men; and the objection to the board being supplies is, as we understand it, rested solely upon the fact that it was furnished by a hotel-keeper in the city, and at a considerable distance from the place where the work was done.   We think these facts alone do not affect the rights of the plaintiff, and that if as a boarding-house-keeper he would have been entitled to a lien, he was entitled to it as a hotel-keeper.

Section 3330, R. S., as amended by section 1, ch. 167, Laws of 1879, declares that the word "supplies," as applicable to

the counties named in section 3329, except the county of Marathon and other counties named in the section, shall be construed to mean feed used for teams, and the food necessarily used *in camp to support the men,* and no other thing; and that, in the county of Marathon and several others named, the words "supplies, rafting or other materials" shall be construed to mean and include all rafting or other materials used by the men and teams in and about the cutting, felling, hauling, driving, running, rafting, cribbing or towing any such logs or timber *which are usually used by men or teams when so employed, including food for both,* and all materials and articles usually or necessarily used in rafting, booming or cribbing logs or timber, and all groceries and provisions, clothing and other *ordinary articles used by a laboring man* or his family while doing any such labor or services upon any such logs or timber, when the same is furnished to and does apply in payment for the labor and services on such logs and timber, and does not exceed the value of such services and labor."

It is not disputed that board furnished to the men employed is covered by both definitions of the word "supplies," above given in the statute; and if the first definition were applicable to Marathon county, it would be quite certain that the charge for board of men at a hotel in the city would not come within the definition of "supplies" as including only *food for men necessarily used in camp;* but the second definition is, by chapter 167, Laws of 1879, made applicable to Marathon county. This definition of the word "supplies" is much more liberal and broad, and includes food for the men whilst employed, and does not restrict it to food *necessarily used in camp.* If the words "which are usually used by men and teams when so employed, including food for both," restrict the food for men to such board as is usually furnished to men in such employments, still we think there is nothing in the evidence in this case which takes the claim of the plaintiff out of the statute.

It was suggested on the argument that, in order to have a claim for board of men under the statute, it could only be for such board as is furnished to the men whilst in camp. We think it is clear from the language of the statute, that the word "supplies," as defined by the second clause of the statute, was not intended to limit it to the board or food furnished in camp. In the counties where the legislature so intended to limit it, it was done by express words in the first definition given. There is no limit as to the place where the board for the men shall be furnished in the second definition; and if there be any restriction, it is that it shall be such board as is usually furnished to men in such employment. Upon this point we think the plaintiff produced sufficient evidence that his bill for board was a claim which would under the statute be a lien upon the ties manufactured by Waller under his contract with Cash.

It is further insisted by the learned counsel for the appellants, that ties are not "logs or lumber" within the meaning of the statute, and that, therefore, the plaintiff had no lien upon them, even though his board bills were "supplies" within the definition given by the act above referred to. We think the word "timber," as used in the statute, includes railroad ties. The statute uses but two words descriptive of the materials upon which the lien can attach, viz., "logs and timber." The word "logs," as used in the statute, clearly means the stems or trunks of trees cut into convenient lengths for the purpose of being afterwards manufactured into lumber of various kinds, to supply the manifold wants of a civilized community, and does not include manufactured lumber of any kind, nor timber which is squared or otherwise shaped for use, without further change in form; and the word "timber" was clearly intended to include the same stems or trunks of trees when cut and shaped for use in the erection of buildings or other structures, and not to be manufactured into lumber within the ordinary meaning of the word "lumber." Rail-

road ties are usually made from the stems of small trees, and shaped for use in the construction of a railroad track, and we think are as clearly timber, within the meaning of that word as used in the statute, as squared sticks of timber prepared for use as beams, sills and posts in the construction of a dwelling-house or other building. This seems to have been the definition of the word as given by this court in the case of *Babka v. Eldred,* 47 Wis., 189, 192. This court, in the construction of the lien laws of the state, has been disposed to construe them liberally in favor of the parties for whose benefit they were enacted. See *Hogan v. Cushing,* 49 Wis., 169; *Winslow v. Urquhart,* 39 Wis., 260. And certainly a liberal construction of the word "timber" will include railroad ties when finished and ready to use in the construction of a railroad track.

The learned counsel for the appellants also contended that they were not the absolute owners of the ties when they gave the bill of sale to Cash; that the bill of sale given to them by Waller was simply a mortgage to secure them for the amount due to them from Waller for advances made. We are at a loss to see how that fact could affect their liability under the contract made with Cash. It is clear from the evidence that Cash got a good title to the ties by their bill of sale, even though Waller was the real owner of the ties at the time the appellants sold to Cash. The apparent title was in them, and, the real owner consenting to the sale and permitting the consideration money to be paid by the purchaser to the appellants, he would be estopped from setting up any title to the same as against Cash, the purchaser. The receipt of the purchase money from Cash by the appellants was a sufficient consideration for the covenant on their part to pay all persons having liens on the same at the time of the sale. There being a sufficient consideration to support their promise, the promise binds them, and, under the repeated decisions of this court, the persons for whose benefit the promise is made may maintain ac-

tions in their own names to enforce such promise. *Putney v. Farnham*, 27 Wis., 187; *Bassett v. Hughes*, 43 Wis., 319; *McDowell v. Laev*, 35 Wis., 171; *Cotterill v. Stevens*, 10 Wis., 422; *Cook v. Barrett*, 15 Wis., 596; *Kimball v. Noyes*, 17 Wis., 695.

The only other error assigned by the appellants is, that the copy of the contract was improperly received in evidence against their objection. It is said in the argument in this court, that it was improperly received, for two reasons: *first*, that no sufficient reason was given for not producing the original; and *second*, that it was not shown that the copy offered was a true copy of the original. The last objection, we think, is not sustained by the evidence. It is true that the certificate attached to the copy was not sufficient to authorize it to be read as a copy: *first*, for the reason that it did not show that it had been compared with the original; and *second*, because the certificate was not made by a person authorized by law to certify to it in order to make the copy so certified admissible as evidence. But the person who made the copy from the original was in court, and testified that it was a copy of the original contract. This, we think, was sufficient without the certificate to authorize the court to receive the same in evidence as a copy of the original contract.

As to the first objection, that the original should have been produced, or some good reason shown for not producing it before the copy was admissible, we think that objection was not made with sufficient distinctness on the trial. There were three objections made to the receipt of the copy in evidence. The first objection was, " that it was not the original contract, and that it was not yet proven to be a true copy." This objection was sustained, and the plaintiff produced the person who made the copy, who testified that he made the copy from the original. The copy was then offered in evidence, again objected to " as incompetent;" the objection was overruled; and then the appellants cross-examined the witness as to his

knowledge of the original from which he made the copy, and again objected to the copy being read in evidence, " for the reason *that it is not proven that this copy is a true and correct copy of the original contract, and it is therefore incompetent and inadmissible.*" This objection was overruled, and exception taken, and the copy was then read in evidence. We think that the act of the appellants in assigning as the ground of their objection to the receipt of the copy in evidence that it was not a true copy, was a waiver of any right to object now upon this appeal that it was improperly received because there was no sufficient reason shown for not producing the original. There are two rules well established by the decisions of this court relating to exceptions to the introduction of documentary evidence. The first is, that where the evidence would be competent if certified or proved in the way pointed out by law, a general objection to the evidence as incompetent is not sufficient to raise the question as to its proper authentication, and upon such general objection the evidence may be received, although not properly proved or authenticated. *Best v. Davis,* 18 Wis., 386; *Bowman v. Van Kuren,* 29 Wis., 209–215; *Evans v. Sprague,* 30 Wis., 303; *Neis v. Franzen,* 18 Wis., 537; *State ex rel. v. Norton,* 46 Wis., 332; *Pettit v. May,* 34 Wis., 666; *Tomlinson v. Wallace,* 16 Wis., 225. The other rule is, that when a specific objection only is made to the receipt of evidence, either documentary or otherwise, all other objections are considered waived. *Hanson v. Milwaukee Mech. Mut. Ins. Co.,* 45 Wis., 321–23. In this case, the appellant having objected to the receipt of evidence on the ground that the document was not a correct copy of the original, he cannot now object that the original should have been produced.

We find no error in the record which would justify the reversal of the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.