JONES *v.* EUBANKS.

1. Amendment of an affidavit for distress warrant having excluded any claim other than rent, motion to dismiss the warrant on the ground that "it was for other purposes than collecting rent, and was for the collection of corn, fodder and cotton-seed, and not rent," was properly overruled.
2. The verdict not being a part of the record under review, it cannot be determined whether or not the same sets forth with sufficient certainty the amounts due, nor whether it is contrary to law and evidence.
3. An affidavit to foreclose a landlord's lien for supplies furnished to the tenant, specifying the amount due and complying with the other requisites for such foreclosure, without an itemized account of the supplies being attached, is sufficient. If issue were taken on the amount claimed to be due, the court might, on motion, require the plaintiff to attach an itemized account.

4. The judge may give his reasons for his decision of a question properly made before him, although the jury may hear them.

(a) It may be the duty of the court, in furtherance of justice, under some circumstances to hold up a fund in order that a proper distress warrant may be sued out.

5. Board furnished to the tenant at the table of the landlord, under the rent contract whereby the tenant agrees that the landlord shall have a lien on his crop for his board, is within the spirit of the statute giving landlords the right to secure themselves from the crops of the year in which supplies are furnished, upon such terms as may be agreed on by the parties.

6. There being no evidence that the landlord consented to the removal of the cotton from the premises, or that such removal was necessary in order to enable the tenant to pay his rent, the charge to the jury could not be qualified by reference to these points.

February 7, 1891. By two Justices.

Distress warrant. Amendment. Verdict. Practice. Landlord and tenant. Liens. Charge of court. Before Judge MILLER. Houston superior court. April term, 1890.

Reported in the decision.

C. C. DUNCAN, for plaintiff in error.

A. S. GILES, contra.

SIMMONS, Justice.

1. Eubanks sued out a distress warrant against Jones, on the ground that he was removing his crops from the premises. At the trial Jones moved to dismiss the distress warrant "on the ground that it was for other purposes than collecting rent, and was for the collection of corn, fodder and cotton-seed and not rent." His motion was overruled, and he makes this the first ground of his motion for new trial. There was no 'error in overruling the motion to dismiss, inasmuch as it appears in this ground of the motion that the plaintiff amended his warrant so as to exclude everything except rent, and the affidavit sent up in the record shows that, if there was anything in the original affidavit but a claim for rent, it had been stricken therefrom. The affidavit in the record contains nothing of that kind,

but only claims so much cotton and the price thereof. But we are not to be understood as holding that the motion should have been granted, if no amendment had been made.

2. The second ground of the motion complains that the verdict does not set forth with sufficient certainty the amount due on the distress warrant and the amount due for supplies. We cannot determine from this record whether this is true or not, as the verdict was not set up, nor was it specified by the plaintiff in error in his bill of exceptions. The same may be said of the third, sixth and seventh grounds of the motion.

3. The fourth ground complains that the court erred in not dismissing the foreclosure of the lien for supplies on the ground that no itemized account was attached to the lien foreclosure or furnished to the court. We do not think it necessary, in foreclosing a landlord's lien for supplies furnished a tenant, to attach thereto an itemized account of said supplies. If the affidavit specifies the amount due and complies with other requisites of the law on the foreclosure of liens, it is sufficient. If the defendant should resist the foreclosure of the lien and dispute the amount claimed to be due in the affidavit of foreclosure, it then becomes a suit in court, and the court might, upon defendant's motion, require the plaintiff to attach an itemized account.

4. The fifth ground complains that the court erred, during the trial and in the presence and hearing of the jury, in asking counsel for the defendant, "Of what practical benefit will it be for the defendant to show that the distress warrant was prematurely issued; will it not be the duty of the court to direct that the funds be held until a proper warrant can be sued out?" It would seem that this was not said to the jury in the way of a charge, although they may have heard it. It

appears to have been a colloquy between the court and the counsel, and a reply by the court to some question or motion by the counsel. If we were to hold this error, it would be virtually to rule that the jury must be sent from the presence of the court whenever a motion is made to dismiss a warrant or to nonsuit a case. It is the duty of the court to decide all proper questions made before him, and it cannot be error for him to give his reasons in doing so, although the jury may hear them. Moreover, we do not think that the principle announced by the court in his question to the counsel was wrong. It may be the duty of the court, in the furtherance of justice, under some circumstances to hold up a fund in order that a proper distress warrant may be sued out.

5. The eighth ground complains that the court erred in charging the jury that "board could be reserved as provisions and supplies, and a lien therefor could be created on the crop, and enforced by foreclosure of lien." Our code, §1978, declares : "Landlords furnishing supplies, money, farming utensils, or other articles of necessity to make crops, or furnishing clothing and medicines, supplies, or provisions for the support of families, or medical services, tuition or school books, shall have the right to secure themselves from the crops of the year in which such things are done or furnished, upon such terms as may be agreed upon by the parties," etc. See Acts of 1874, p. 18. The evidence in this case shows that the landlord rented to the tenant certain lands on which to make a crop, and agreed to board the tenant at her private table, for which the tenant agreed to pay her 875 pounds of lint-cotton and entered into a written contract whereby he agreed that she might have a lien on his crop for his board. We are inclined to think that, under this state of facts, when the landlord furnished board to the tenant, the board was in the nature of "supplies." If the landlord had furnished meat and

meal or flour, no one would say that the tenant could not, under the section above quoted, give the landlord a lien therefor upon the crop. We can see but little difference between furnishing the tenant the raw material and furnishing it to him cooked. The statute of Wisconsin provides for a lien in favor of persons furnishing supplies to men engaged in getting out logs and timber. In the case of Kollock *v.* Parcher, 52 Wis. 393, the Supreme Court held that the word "supplies" in that statute included the board of the men, even when furnished at a hotel in a city several miles from the place where they were at work. In the case of Winslow *v.* Urquhart, 39 Wis. 260, it was held that, where the statute gives to any person "that shall furnish any supplies, or that may do or perform any labor or services in cutting, falling, hauling, . . any logs or timber" a lien on them "for the amount due for such supplies, labor or services," these terms include an amount due under contract for cooking food for the men engaged in driving logs. In the opinion on page 268, Lyon, J., says: "It seems to us that the person who cooks the food for the men who fall the trees and work directly and immediately upon the logs or timber, performs service in cutting, falling, driving, etc. such logs or timber, within the meaning of the statute, equally with those who use the axe, the saw or the team to the same end. These are all engaged in the business of manufacturing trees into logs and timber, and transporting the same from a forest to a market; and to accomplish the common purpose, the labor of each in his department is necessary. Moreover, he who cooks the food 'furnishes supplies,' equally with the person who furnishes the raw materials. The acts of both are essential to the supplying of the men with food, and both 'furnish supplies,' within the meaning of the statute." To say the least of it, while the board, under the facts of this case, may not be within the very letter

of the act, it is certainly within the spirit of it. And if the tenant agrees for the landlord to furnish him cooked provisions or supplies, instead of the raw materials, we think he may give the landlord a lien on his crops therefor.

6. The ninth ground alleges error because the court charged "without qualification, that if the jury believed from the evidence that the tenant was moving the crop from the rented premises, or seeking to remove the same, the plaintiff had the right to sue out a distress warrant, without qualifying said charge, that if the removal was necessary in order to enable the tenant to pay his rent, or if the defendant was removing the same with the consent of the landlord, then the warrant would not lie." It was argued before us that the evidence showed that the tenant was simply hauling his cotton from the premises to a public gin, and that he had the consent of the landlord thereto, and the object of the ginning of the cotton was to sell it and pay the landlord the rent. We have examined this record and find in the brief of evidence that the tenant had requested permission of the landlord to move the cotton from the premises, and that the landlord refused to allow the cotton to be moved. Another witness testified that he heard Jones say that he was going to carry two bales of cotton to Macon, as soon as he could get it ginned. This is the only evidence we can find upon the subject of the removal of the cotton from the premises. What the intention of the tenant was, whether to sell the cotton and pay the rent or not, does not appear in the record. And in the case of *Daniel* v. *Harris*, 84 *Ga.* 479, it was held by this court that a tenant seeking to remove from the premises any portion of the commercial crops before the rent is due, without his landlord's consent, is subject to distress immediately, no matter what may be the purpose or intent of such removal. So we think there was no error in this charge.　　*Judgment affirmed.*