New York Life Insurance Company, Appellant, vs. Hamlin and another, imp., Respondents.

*May 7 — May 24, 1898.*

*Suretyship: Bond of agent: Modification of contract: Action by insurance company on bond given by subagent to general agent.*

1. The bond of an insurance agent, conditioned that he shall pay over all moneys coming to his hands, and all moneys for which he may be liable to his principal on account of loans or advances made to him, "during the continuance of the present agency or any future agency," and providing that it shall remain in force as long as said agent shall continue to be the agent of said principal, "whether under this existing appointment or any future one," is *held* to cover a continuance of the agency under a new agreement modifying that which was contemporaneous with the bond.

2. A general agent of an insurance company, to whom the company charged moneys advanced for the benefit of his subagents, took

from a subagent a bond for repayment of the advances made to the latter. The general agent was the obligee named in the bond, but it provided that his right to bring an action thereon should be subject to the paramount right of the insurance company, prior to such action, to demand from the subagent all moneys due from him on the bond, and that, on his failure to comply with such demand, the company should have the right to sue on the bond for that or any other breach. *Held*, that no assignment to the company of any right or interest in the bond was necessary to enable it to maintain an action as therein provided.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

One Rust was agent of plaintiff. He appointed Loomis his agent, under a written contract dated April 24, 1893, to canvass for applications for insurance in the plaintiff company. On May 15th Loomis gave Rust a bond, signed by defendants *Hamlin* and *Cram* as sureties, with certain conditions, mentioned in the opinion. Plaintiff, at the request of Rust, advanced money to Loomis, at different times, to enable him to carry on his work. At different times, it is alleged, Loomis collected money on account of premiums payable to plaintiff on policies of insurance issued, and failed to account for the same, either to Rust or to plaintiff, although demand has been made on him so to do. The plaintiff brings this action upon the Loomis bond to Rust, claiming that, under the contracts and bond mentioned, Loomis was directly responsible to it for all sums he had received and not accounted for. The sureties answered, denying that Loomis was an agent of plaintiff; alleging Rust's death, and that, if there was any liability on their bond, it was to his estate, and that plaintiff had no right to prosecute this action.

The case was tried before a referee, who found substantially as follows: (1) That Rust was appointed a general agent of plaintiff on March 20, 1893, and continued to act as such until his death, about June 21, 1894. (2) That on April 24,

1893, Rust appointed Loomis his personal agent, and that he continued his duties until the spring of 1894. (3) That on May 15, 1893, Loomis gave Rust his bond in the penal sum of $1,000 with the defendants as sureties. (4) That on June 16, 1893, Rust again appointed Loomis his agent, under a contract similar to the one of April 24th, except as to commissions allowed, and that the sureties had no knowledge of this subsequent agreement until the trial of the case before the referee. (5) That on April 24, 1893, Rust agreed to advance to Loomis $30 per week, to be charged against his commissions, for three months; and afterwards said agreement was extended to January 6, 1894, at which time it was cut down to $20 per week, and continued until February 10th. The money so advanced was furnished by the company, and charged to Rust on its books, and no account was kept by the company against Loomis. (6) That an action was commenced by the company against Rust's bondsmen, and was settled. (7) That Rust advanced to Loomis, as before stated, $1,260; and that Loomis was entitled to certain credits, leaving a balance due of $332.16. (8 and 9 omitted, as unimportant.) (10) That no action had been commenced by Rust, in his lifetime, on the Loomis bond. As conclusions of law, the referee found that the plaintiff was entitled to judgment for the sum named.

Both parties filed exceptions to the referee's report. Plaintiff moved to modify the report, and defendants to modify and to re-refer as to certain particulars. In the meantime defendants took the deposition of Loomis and one Harris. The matter finally came on for a hearing before the circuit court, and the judge made new findings; 1, 2, 3, 4, and 5 being the same as found by the referee. In finding 6 the court found that the advances to Loomis were made by Rust, and not by the company on Loomis's account, and that the money paid over to Loomis by the company was on Rust's account, and charged to him. In the eighth finding the court states

that no right, title, or interest under the Loomis bond had ever been sold or transferred to the company by Rust or his administratrix, and that the company had, and has now, no right, title, or interest therein. As conclusions of law, the court found that the plaintiff had no right to maintain an action on the bond, and that the defendants were entitled to judgment on the merits.

The plaintiff appeals from the judgment so entered.

The cause was submitted for the appellant on briefs by *Ruger, Norcross & Ruger,* and for the respondents on the brief of *Jackson & Jackson.*

BARDEEN, J. The evidence shows that, under the contract between Rust and plaintiff, the latter agreed to loan or advance to Rust such sums as he would be obliged to pay to his subagents in excess of the first year's commissions. The advances made to Loomis by the company were made under this stipulation. The bond in suit contained several stipulations which are deemed material to this litigation. One was that Loomis should well and truly pay over all moneys that should come to his hands, "as also all moneys which he now owes or hereafter may owe said David H. Rust, or which he may be liable to said David H. Rust on account of loans or advances made to said Edward A. Loomis, Jr., during the continuance of the present agency of said Edward A. Loomis, Jr., or *any future agency.*" Again: "It being understood and agreed that this obligation shall not be annulled or revoked without the consent of the said David H. Rust, but shall be and remain in force as long as said Edward A. Loomis, Jr., shall continue to be the agent of the said David H. Rust, whether under this existing appointment or any future one." The last condition in the bond, and the most important, as affecting the rights of the parties, is as follows: "It being also understood and agreed that the right of said David H. Rust to bring suit on this bond, for any breach

thereof, in his own name, shall be subject to the paramount right of the said *New York Life Insurance Company*, should it so elect, prior to action brought by said David H. Rust or his executors, administrators, or assigns, to demand of said Edward A. Loomis, Jr., all moneys due from him under this agreement with said David H. Rust, or by this bond; and on the failure of said Edward A. Loomis, Jr., to comply with said demand, the said company shall have the right to sue upon this bond for that or any other breach assigned."

The main question for consideration is as to the rights of the plaintiff under this bond and the situation as presented in the findings. It may be assumed as a verity in the case that Loomis is indebted on the bond as found by the referee, and the defendants are liable to some one, unless the contention of the defendants, that they are not sureties for the second contract between Rust and Loomis, made subsequent to the execution of the bond, be admitted. The claims of defendants in this regard may be easily settled by reference to the bond itself. The provisions quoted indicate, beyond the possibility of argument, that their undertaking was intended to, and did, cover the existing appointment of Loomis as agent, "or any future agency," and that they bound themselves to repay to Rust, on default of Loomis to do so, all loans or money advanced under the terms of the agency agreement then pending or any future agreement. This view is emphasized by the further stipulation that the bond should not be annulled without Rust's consent, but should remain in full force so long as Loomis should continue to act as such agent, "whether under this existing appointment or any future one." The better and generally received opinion is that the contract of sureties is to be construed the same as any other contract, and that the same rules should be applied to ascertain the true intention of the parties. Brandt, Suretyship & G. § 92, and cases cited. Where the language is plain and unambiguous, the contract must speak

for itself.  Construing the language in this bond, we have no difficulty in saying that the sureties are bound under both contracts, and this must be so under the most strict construction possible.  It is so because it comes within the strict technical import of the bond.

The right of the plaintiff to sue on this bond was denied by the circuit court because Loomis was never its agent and no right or interest in the bond had ever been assigned or transferred to it, either by Rust, in his lifetime, or his administratrix.  Concede that Loomis was never an agent of plaintiff, and that all the money advanced to him was charged to Rust; the fact remains that Rust has never repaid all the money so advanced, and that Loomis has never repaid Rust.  We are bound to assume these facts to be true, because they are undisputed.  It is also true that neither Rust nor his administratrix has ever begun suit on this bond, and that plaintiff duly made demand upon Loomis before this suit was brought.  The situation then resolves itself into the simple construction of the legal effect of the last clause of the bond, before quoted.  If the trial court's construction was right, the judgment should be affirmed.  If the referee's estimate of its legal effect is correct, then the judgment must be reversed.  It requires no delving among the books, or any serious demand upon one's gray matter, to ascertain the intention of the parties.  Rust had agreed to make advances to Loomis.  The plaintiff had agreed to make such advances to Rust for the benefit of his subagents.  They knew that the first year's commissions might not be enough to pay expenses.  Hence the matter of advances was put in the bond.  Rust knew the money was to come from plaintiff, and he provided in the bond that his right to bring suit on it for a breach by Loomis should be subject and subordinate to the paramount right of plaintiff to demand of Loomis all moneys due on the bond; and it was further agreed that, in default of payment by Loomis, the company should have

a right to bring suit for the same. Can there be any question but that the plaintiff was beneficially interested in the money that might become due on this bond? It seems to us not. The parties saw fit to contract that under certain conditions a beneficial interest in this bond should inure to the company. All of these conditions have been met and satisfied, and, under the evidence, the right of the company to enforce payment became absolute, without assignment or transfer by Rust or his administratrix. The fact that a portion of the money due the company from Rust had been paid by his bondsmen did not alter the situation. The payment of a part of the debt is no satisfaction of the whole. The circumstances in proof do not show that the payment by Rust's sureties was an accord and satisfaction of the whole debt. After applying the payment so made, there yet remained a substantial balance due.

We therefore hold that the situation here presented comes within the rule so frequently upheld and applied in this court, that where one person, for a valuable consideration, engages with another to do some act for the benefit of a third person, the latter may maintain an action upon such engagement, although not a party to it. *Cotterill v. Stevens,* 10 Wis. 422; *Kimball v. Noyes,* 17 Wis. 695; *Putney v. Farnham,* 27 Wis. 187; *McDowell v. Laev,* 35 Wis. 171; *Bassett v. Hughes,* 43 Wis. 319; *Kollock v. Parcher,* 52 Wis. 393; *Grant v. Diebold S. & L. Co.* 77 Wis. 72; *Fulmer v. Wightman,* 87 Wis. 573.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment for the plaintiff upon the referee's report.