MRS. LILLIE WOFFORD *v.* FRED and LEE HOOPER *et al.*

. (*Nashville.*   December Term, 1923.)

1. **STATUTES.**   Statute held unconstitutional, because applicable to single county.

   Private Acts 1915, chapter 677, purporting to amend Acts 1875, chapter 116, so as to give a landlord a lien on his tenant's crop for money furnished, *held* unconstitutional, because applicable alone to Montgomery county. (*Post, p.* 251.)

2. **LANDLORD AND TENANT.**   Landlord has no lien on tenant's crop for money loaned.

   Under Shannon's Code, section 5305, a landlord has no lien upon his tenant's crop for money loaned. (*Post, p.* 251.)

   Acts cited and construed:   Acts 1915, ch. 677; Acts 1875, ch. 116.

   Code cited and construed:   Sec. 5305 (S.).

3. **EQUITY.**   Amendment of bill to show that complainant was suing for benefit of an assignee held proper.

   Amendment, on hearing, of a bill filed to impound and subject to a judgment a crop of tobacco, so as to show that the original complainant had assigned the claim sued upon to another and was suing for his use, *held* within the court's discretion to permit. (*Post, pp.* 251. 252.)

4. **LANDLORD AND TENANT.**   Father held entitled to landlord's lien for ''board'' furnished tenant son.

   Under Shannon's Code, section 5305, giving landowners a lien on the crops raised on their land by share-croppers for "supplies, implements, and work stock furnished such croppers," a father who had boarded his son while raising a crop of tobacco on his land *held* entitled to a lien on the crop for the board so furnished, as against a judgment creditor of the son; "board" being furnished food.   (*Post, pp.* 254-255.)

Wofford v. Hooper.

Cases cited and approved:   Wright v. Walton, 56 Miss., 1;   Kollock v. Parcher, 52 Wis., 393.

Case cited and distinguished:   Jones v. Eubanks, 86 Ga., 619.

FROM MONTGOMERY .

Appeal from the Chancery Court of Montgomery County.—HON. J. W. STOUT, Chancellor.

H. B. STOUT, for appellant.

W. M. DANIEL, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill was filed to impound and subject to the satisfaction of a magistrate's judgment a small crop of tobacco raised by Lee Hooper, a tenant working on shares on the farm of his father, Fred Hooper. The defendant Fred Hooper sets up a lien under the statute, Shannon's Code, section 5305, providing that land owners "shall have a lien on the crops raised on such lands by share-croppers for supplies, implements, and work stock furnished such croppers," etc.

The chancellor sustained the bill, and gave judgment in favor of complainant for the use of one Boswell, but provided that from the fund arising from the sale of the tobacco, which had by agreement been paid into court, there should first be deducted and paid to defendant Hooper the sum of $48.90, recognizing and allowing to

Hooper a lien for items of supplies amounting to this sum, but the chancellor declined to allow the lien claimed by Hooper for other larger items of his claim, among these claims being borrowed money and board. Defendant Hooper has appealed and three questions are presented here for consideration: (1) As to the constitutionality of chapter 677, Private Acts 1915; (2) as to the action of the chancellor in permitting the complainant to amend upon the hearing so as to show that the original complainant had assigned the claim sued on to Boswell and was suing for his use; and (3) whether or not, under the section of the Code hereinbefore cited, board furnished to the tenant comes within the term "supplies" used in the statute.

The chancellor held the act of 1915 unconstitutional; it being an act proposing to amend the act of 1875 so as to extend the lien to money furnished. In so holding the chancellor was manifestly correct, since the act is so framed as to apply alone to Montgomery county; nor does the act recite the title, subject, or substance of the law proposed to be amended. We do not gather from the brief of counsel that the constitutionality of this act is seriously insisted upon. Being unconstitutional, and there being no provision for a lien for borrowed money in the Code section relied on, 5305, the chancellor was correct in disallowing this portion of the claim.

With regard to the amendment complained of, we are of opinion that this was a matter within the discretion of the chancellor, and that his discretion was not abused. Amendments are very liberally allowed, and no injury resulted or could have resulted from this amendment.

With respect to the item of board which the chancellor disallowed as not coming within the lien law, it appears that the courts of this State have not determined the precise question. The term "supplies" is held to be synonymous with "necessaries" when used in this connection (*Wright* v. *Walton,* 56 Miss., 1), and these terms taken together cover quite a wide scope. The manifest intention of the legislature was to give a lien to the land owners for whatever might be supplied or furnished by them to their croppers or tenants necessary in order to enable the croppers to live in reasonable comfort and under such conditions as would enable them to work the crop. The common custom well recognized is for food to be furnished under the head of "supplies," to be consumed by the tenants in their own quarters, usually furnished by the landowner, and there prepared for consumption. However, there seems to be no sound reason why the lien should be limited to food furnished to the tenant, to be prepared by the tenant, and denied if prepared directly under the supervision of or by the landowner and consumed at his table. In *Jones* v. *Eubanks,* 86 Ga., 619, 12 S. E., 1066, this view is expressed as follows:

"The evidence in this case shows that the landlord rented to the tenant certain lands on which to make a crop, and agreed to board the tenant at her private table, for which the tenant agreed to pay her 875 pounds of lint cotton and entered into a written contract whereby he agreed that she might have a lien on his crop for his board. We are inclined to think that, under this state of facts, when the landlord furnished board to the tenant, the board was in the nature of 'supplies.' If the landlord had furnished

meat and meal or flour, no one would say that the tenant could not, under the section above quoted, give the landlord a lien therefor upon the crop. We can see but little difference between furnishing the tenant the raw material and furnishing it to him cooked. The statute of Wisconsin provides for a lien in favor of persons furnishing supplies to men engaged in getting out logs and timber. In the case of *Kollock* v. *Parcher,* 52 Wis., 393, the supreme court held that the word 'supplies' in that statute included the board of the men, even when furnished at a hotel in a city several miles from the place where they were at work."

The reason of the statute is founded in the necessity of caring for those tilling the soil who otherwise have no means or credit enabling them to provide for themselves. The crop into which they are thus enabled to put their labor and produce is rightly subjected to a lien accruing to those who thus indirectly supply the labor. In the instant case it appears that this young man was without means, and unless provided with food by the landowner, who happened to be his father, he would have been unable to till the crop. That he was furnished food at the table of his father under these circumstances does not seem upon any sound reason to be a circumstance that should destroy the right of lien. It is objected that the term "board" is used, and that this term covers lodging as well as food. Quite commonly the expression "board and lodging" is used when both are furnished, and the term "board" may well be applied in a sense limiting it to food. The term "board" had its origin in the wooden material used in the construction of a table, or stand. So Webster defines

"board" in the sense now under consideration as, "what is served on a table as food; stated meals; provisions; entertainment; usually as furnished for pay." In 8 C. J., p. 1130, the noun "board" is thus defined: "That which is served at the board or table; food, especially meals regularly furnished for pay, sometimes including lodgings, but often, as in table board, day board, excluding lodging." The term is sometimes extended to include lodging—so Webster defines the verb, "to obtain meals, or meals and lodgings. While it may have this double meaning, the primary meaning of the word "board" is furnished food, and the presumption therefore is in this case, it not appearing affirmatively that the charge made included lodging, that the charge was for the food furnished. The record does not establish clearly whether Lee Hooper roomed or lodged in the same house with his father or not; and, if it appeared that he did do so, the smallness of the charge, $12 a month, less than fifty cents a day, is consistent with the theory that the charge made was for food only.

It results that the decree of the chancellor must be so modified as to extend the lien in favor of defendant Hooper to the item of "board," and thus modified the decree will be affirmed.