Parker, C. J.
We cannot doubt that the two hundred dollars, possessed by the plaintiff on the morning of the day of election, was his property, so as to be an estate to the value of sixty pounds, within the meaning of the constitution.
He received this money as his own property ; pursuant to a contract before made, and then in performance by him, without any reference to his qualification as an elector. He had the absolute dominion over it, to pay his debts, to purchase property with it, or to give it away if he had seen fit. Had he died on the day of the election, his administrator would have rightfully challenged the property; and the persons who * advanced it could have supported no claim to it. By the word estate, as used in the constitution, it is obvious that every species of property, capable of valuation in money, was intended to be embraced. The elector is to have an annual income from real estate of three pounds, or any estate which is any property of the value of sixty pounds.
It is objected that he had given his accountable receipt for this money. But be was obliged to account for it no otherwise than by performing his contract. No action would lie upon this receipt; and it could only be shown in evidence to prove his contract, and to ascertain the damages attending a non-performance of it on his part.
It has been urged that the possessor of such a receipt might as well exhibit it as evidence of his qualification to vote, as the holder of the money. But it is not so. The receipt, in the hands of the person to whom it was given, is only evidence of a debt paid in advance, and not of any estate or property in the holder.
We do not mean to intimate that a transaction of this nature, resorted to for the purpose of giving the pecuniary qualification to an elector, could be successful. Such a subterfuge would be fraud *319 ulent and unavailing. The case reported excludes all suspicion of fraud, and leaves the single question, whether money thus obtained belongs to, and is the estate of, the holder; and we think it must be a harsh and severe construction of the constitution which could give room to doubt.
As to the question, whether the constitution intended that the estate, which is established as the qualification, should be over and above all debts due from the elector, we cannot imagine that so strict a scrutiny into every voter’s affairs, as such a construction would require, was intended. If it were so, the selectmen, who are to decide promptly, and from the pressure of affairs are often held to decide instantaneously, would be obliged to spend hours, and perhaps days, in investigating the affairs of their fellow-citizens Besides which, this would necessarily produce such an exposure of every * man’s circumstances, as would be injurious and vexatious. It cannot be supposed that this sort of inquisition was intended to be established by the constitution; but that the true intent and meaning of the constitution is, that every man, who is in possession of the requisite estate, claiming it as his own, and having the lawful right to dispose of it, shall be entitled to the franchise.

Judgment according to the verdict.