Merrimack, }
Dec., 1896. }

## HANLON *v.* PARTRIDGE *& a.*

## DONOVAN *v.* SAME.

## GALLAGHER *v.* SAME.

The statute (P. S., *c.* 32, *s.* 8) imposing a penalty for the "fraudulent conduct of supervisors in correcting the check-list" is penal and not remedial.

One deprived of the right to vote may maintain an action at common law for the redress of the injury.

Supervisors of the check-list are charged with the performance of duties partly judicial and partly ministerial, and are liable for damages resulting from a willful, corrupt, or malicious abuse of authority.

Upon the repeal of an act declaratory of the common law, the latter remains in force.

CASE, for willfully and maliciously neglecting and refusing to place the plaintiffs' names upon the check-list for Ward 3 in Concord. The actions were tried together by the court, and in each of them there was a verdict for the plaintiff.

*Albin, Martin & Howe,* for the plaintiffs.

*Sargent & Hollis* and *William A. J. Giles,* for the defendants.

CLARK, J. These are actions on the case against the defendants, supervisors of the check-list of Ward 3 in Concord, for willfully and maliciously neglecting and refusing to insert the plaintiffs' names on the list of voters at the state biennial election, holden November 6, 1894, whereby the plaintiffs, being duly qualified to vote, were deprived of the right of suffrage. The defendants filed a general demurrer in each case, admitting all facts that were well pleaded and denying the plaintiffs' right to recover, as matter of law. Subject to exception, the court overruled the demurrers and denied the motion for nonsuit made in each case.

An examination of the declarations, and a comparison of the facts alleged in them with the provisions of the law of this state relating to the rights and qualifications of voters and the duty of supervisors, show that the declaration in each case is sufficient, as matter of law, to entitle the plaintiff to recover. The demurrers were properly overruled.

"If the supervisors at any session holden for the correction of the check-list, on receiving satisfactory evidence that any person

whose name is on the list is not a legal voter, shall neglect or re-
fuse to erase such name from the list, or shall neglect or refuse
to insert on the list the name of any person who is a legal voter,
having satisfactory evidence thereof, or shall neglect or refuse to
hear or examine any evidence offered for such purpose in either
of the cases aforesaid, or shall at any time insert on the list the
name of any person not a legal voter, knowing such to be the
case, or shall knowingly erase therefrom or omit to insert the
name of any legal voter, he shall be fined not more than fifty
dollars for each offence." P. S., c. 32, s. 8. The defendants con-
tend that this section contains all the law applicable to the pun-
ishment of supervisors for a willful violation of duty, which is by
a criminal action and by a fine not exceeding fifty dollars.

In *Ashby* v. *White*, 2 Ld. Ray. 938, it was decided that an action
was maintainable at common law, by one having a right to vote
at an election, against an election officer for depriving him of his
right to vote. This decision, rendered nearly two hundred years
ago, has been generally followed in this country, and was cited
and recognized in *Wheeler* v. *Patterson*, 1 N. H. 88. In *Turnpike*
v. *Champney*, 2 N. H. 199, *Richardson*, C. J., speaking of select-
men in laying out public and private ways, says (*p.* 201) : " They
seem to stand in the situation of the moderator of a town-meeting,
who is unquestionably answerable for maliciously rejecting the
vote of one who has a right to vote." " That one entitled to
vote shall not be deprived of the privilege by the action of the
authorities, is a fundamental principle. . . . If the inspectors of
elections refuse to receive the vote of an elector duly qualified,
they may be liable both civilly and criminally for so doing."
Cool. Con. Lim. (6th ed.) 775 ; Cool. Torts 415. Before the en-
actment of P. S., c. 32, s. 8, the defendants would have been
liable to the plaintiffs upon the facts stated in their declarations.
The statute imposes a penalty upon the supervisors for a willful
violation of duty. It furnishes no remedy to the party deprived
of the right of suffrage. It does not make unlawful what was
lawful before. It provides a new method of punishing official
wrongdoing; but gives no relief to the parties aggrieved, who
are left to pursue the remedy which the law provides by a civil
action for damages.

It is contended that supervisors are judicial officers, or *quasi*
judicial officers, and, therefore, no civil action can be maintained
against them for any neglect or breach of official duty, however
corrupt or willful it may be. The rule of law which exempts
judicial officers from civil liability is based on grounds of public
policy, and has for its purpose and object the preservation of the
independence of the judges. It is said by *Esher*, M. R., in
*Anderson* v. *Gorrie*, L. R. [1895] 1 Q. B. 668 : " By the common
law of England it is the law that no such action will lie. The

ground alleged from the earliest times as that on which the rule rests is that, if such an action would lie, the judges would lose their independence, and that the absolute freedom and independence of the judges is necessary for the administration of justice." In *Fray* v. *Blackburn*, 3 B. & S. 576, *Crompton*, J., said: "It is a principle of our law that no action will lie against a judge of one of the superior courts, for a judicial act, though it be alleged to have been done maliciously and corruptly. The public are deeply interested in this rule, which, indeed, exists for their benefit, and was established in order to secure the independence of the judges, and prevent their being harassed by vexatious actions."

The reasons for exempting judges from civil liability for their willful and malicious acts do not apply to such public officers as assessors of taxes, county commissioners, and supervisors of the check-list, whose duty it is to decide questions arising, not between individual parties, but between individuals and the public whom they represent. Such officers are not answerable for errors of judgment, but they are liable for the willful and malicious abuse of their authority to the injury of another. In *Spear* v. *Cummings*, 23 Pick. 224, 227, *Shaw*, C. J., after quoting *Lincoln* v. *Hapgood*, 11 Mass. 350, and *Bridge* v. *Lincoln*, 14 Mass. 367, holding that selectmen are liable for honestly rejecting the vote of a legal voter, says: "The principle upon which these cases were decided was that this is a great personal, political, and constitutional privilege, in danger of being frequently and wantonly violated by those in the exercise of power, and that it would be difficult, in most cases, to prove actual malice; and, *ex necessitate*, the law allows such action, upon considerations of great public policy, to prevent greater mischief."

Public interest requires that judicial officers should be protected in their official duties, and this immunity from liability is unquestioned. But the duties of supervisors of the check-list are of a different character. They are partly judicial and partly ministerial; and when in their discharge such officers are actuated and controlled by willful, corrupt, and malicious motives, they are not exempt from an action for the damages occasioned by their misconduct. It is alleged in the writs that the defendants willfully and maliciously neglected and refused to put the plaintiffs' names on the check-list, and the court has found that evidence was introduced in proof of these allegations. It thus appears that the defendants willfully and maliciously deprived the plaintiffs of the right of suffrage, and the actions can be maintained. *Waldron* v. *Berry*, 51 N. H. 136, and cases cited.

The act of July 4, 1838 (Laws 1838, c. 384, s. 6), making selectmen neglecting their duty liable to a criminal action and a civil action for damages, and its repeal in the revision of 1842–43

(R. S., *c.* 25, *ss.* 3, 21; *Ib.*, *c.* 230, *s.* 13), affords no argument for or against the maintenance of the present suits. If it must be inferred from the enactment that the legislature understood that the action did not lie at common law, the inference from its repeal is quite as strong that the revisors and the legislature thought the action did lie at common law, and that the provision was therefore unnecessary, as that they deemed it unwise.

The exception to the denial of a motion for a nonsuit is over-ruled. The plaintiffs introduced evidence tending to prove the allegations contained in the writs, and the court found it sufficient, as appears from a finding for each of the plaintiffs.

*Judgment for the plaintiffs.*

BLODGETT, J., did not sit: the others concurred.