## HILTON v. THATCHER.

No. 1746.   Decided November 16, 1906 (88 Pac. 20).

On rehearing January 3, 1907.

1. DOWER—NATURE AND REQUISITES—COMMON LAW.   Under section 17 of the organic act of the territory of Utah, extending the Constitution and laws of the United States to the territory, and Constitution, article 24, section 2, continuing in force all laws of the territory until they expired of their own limitation or were regularly repealed, the common law respecting dower remained in force during all of the time Utah remained a territory, and continued in force after it became a state, except as modified by statutory enactment.[1]

2. SAME—STATUTORY PROVISIONS.   Compiled Laws Utah 1876, p. 342, provided that no right of dower should exist or be allowed in the territory. Compiled Laws Utah 1888, p. 119, enacted by Congress in

[1] People v. Green, 1 Utah 11.

March, 1887, provided that a widow should be endowed of a one-third part of the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she released her right thereto. The state was admitted in January, 1896. In April, 1896, by Laws 1896, p. 356, c. 118, the Legislature re-enacted the congressional act referred to. January 1, 1898, Revised Statutes, section 2826, providing that one-third of the real property possessed by the husband during marriage to which the wife has made no relinquishment of her rights shall be set apart to her in fee simple if she survive him, and section 2832, providing that there shall be neither dower nor curtesy in the state, went into effect. *Held*, that the common law as to dower continued in force from 1887 to January 1, 1898.

3. SAME—POWER OF LEGISLATURE. Dower is entirely within the control of the legislative power till it becomes vested by the death of the husband, and, till vested, the Legislature may modify, abrogate, increase, or diminish it at pleasure, as far as it affects the wife.

4. SAME—WHAT LAW GOVERNS. The right of dower is governed by the law in force at the death of the husband, while the measure of the right is determined by the law in force at the time of the husband's conveyance, where the wife did not relinquish her right.

5. SAME—STATUTORY PROVISIONS. The right of a widow, whose husband died after January 1, 1898, to dower in land which he conveyed without her consent in 1888 is not abrogated by Revised Statutes, section 2832, providing that there shall be no dower nor curtesy in the state, in view of section 2826, giving the widow one-third of all the real property possessed by the husband during marriage to which she made no relinquishment of her rights.

APPEAL from District Court, Salt Lake County; C. W. Morse, Judge.

Action by Annie F. A. Hilton against George W. Thatcher. On the death of the defendant, Robert W. Sloan and others were submitted as defendants. From a judgment in favor of defendants, plaintiff appeals.

REVERSED AND REMANDED.

*N. V. Jones* for appellant.

*King, Burton & King* and *S. Russell* for respondents.

The dower interests of the wife is a favorite of the law. It is an estate in the wife, which is wholly distinct from that of the husband, whether it be a common law dower life estate, or an estate provided under the statute in lieu of the common law dower. If it be an estate given the wife under the statute in lieu of dower, it partakes, under the law, of the incidents of dower, and is entitled to the same protection. The husband cannot alien or impair the wife's interest by his contract, nor forfeit it by laches. (21 Ga. 161; 69 Ill. 481; 35 Ind. 181; 106 Ind. 296; 49 Miss. 190; *Steele v. Gallatly,* 41 Ill. 39; *Williams v. Courtney,* 77 Mo. 588; 2 Woerner's Am. Law of Admn., sec. 113; *Hinds v. Pugh,* 48 Miss. 268; *Apple v. Apple,* 38 Tenn. 348; *Shoot v. Galbreath,* 128 Ill. 214.)

It is not inconsistent that a widow should take two separate interests in the husband's estate at the same time—one for a dower interest, and another for an interest in fee. (*Knudsen v. Hannaberg,* 8 Utah 203; *Shoot v. Galbreath,* 128 Ill. 214; *Sutherland v. Sutherland,* 69 Ill. 481; *Burt v. Randlett,* 59 N. H. 130.)

"The law regards it (that is, dower) as an encumbrance on the husband's title. She joins with her husband not to alienate any estate, but to release a future contingent right." (*Hatcher v. Buford,* 60 Ark. 169; *Hewitt v. Cox,* 55 Ark. 235.)

It is not an estate separate from that of deceased husband. Both dower and curtesy at common law were prolongations of the deceased consort's estate annexed by law and to continue for the life of the surviving consort.

"Upon the assignment of dower the widow acquires no new freehold, but her title is a continuation of that of her husband." (14 Cyc. 886, and cases cited in footnote 54.)

"The estate of the widow after assignment of dower is a continuation of the estate of her deceased husband." (*Moore*

*v. New York,* 8 N. Y. 110; Greenleaf Cruise, etc., Dower T. 6, ch. 2, sec. 17.)

"The right of dower until fixed and vested by the death of the husband is subject to the control of the Legislature, and may be modified or taken away." (Myers on Vested Rights, p. 30, sec. 117; *Randall v. Krieger,* 23 Wall. [U. S.] 137; 14 Cyc., 884-885 and cases cited.)

"The inchoate right of dower during the lifetime of the husband is not an estate in land. It is not even a vested right, but a mere intangible inchoate contingent expectancy." (*Smith v. Howell,* 53 Ark. 279.)

"Such a possibility (inchoate dower) may be released but it is not it is believed, the subject of grant or assignment, nor is it in any sense an interest in real estate." (*Moore v. New York,* 8 N. Y. 110.)

FRICK, J.

This action was commenced by the appellant, as the widow of John R. Park, deceased, to recover a widow's interest in the lands of her husband, conveyed by him without her consent while the marriage relation existed. The material allegations of the complaint are, in substance, that appellant and one John R. Park, now deceased, were married in Salt Lake City, Utah, December 5, 1872, and that said Park and appellant were and continued to be husband and wife until the death of said Park, which occurred on the 30th day of September, 1900; that said Park, subsequent to said marriage become seised and possessed of certain real estate situate in Salt Lake City, describing the same; that said Park on or about the 9th day of March, 1888, sold and conveyed to the respondent, George W. Thatcher, the lands above mentioned; that appellant at no time sold, conveyed, or relinquished her right or interest in and to said real estate, or any part thereof, and that she never received any consideration for said interest; that she is entitled to a one-third interest in value of said premises in fee, or a one-third interest therein as a life estate as the surviving widow of said John R. Park, deceased; that said George W. Thatcher died pending this action,

and the other respondents succeeded to said real estate, as the heirs of said George W. Thatcher; and that the appellant afterwards made demand for her interest in said real estate, upon the respondents herein; and that she has continually, since her marriage with said Park, resided in Salt Lake City, Utah. Upon substantially the foregoing facts appellant prayed judgment that she might be declared to be the owner of one-third in value in fee, or that her interest in said real estate may be ascertained by the court and the same set apart for her as her separate estate, or that, in lieu thereof, she might recover the value of her interest in a money judgment against the claimants of said real estate, and for general relief. To this complainant a demurrer was interposed by respondents, upon two grounds: (1) That the complaint did not state facts sufficient to constitute a cause of action; and (2) that the action was barred by the provisions of section 2859, Revised Statutes Utah 1898. The lower court sustained the demurrer, and, the appellant electing to stand upon her complaint, a judgment dismissing the action was duly rendered, from which she prosecutes this appeal.

As the action is clearly not barred, the only error to be considered is whether the court erred in sustaining said demurrer and entering judgment dismissing the action upon the first ground. The action being instituted to recover a widow's share in a deceased husband's lands alienated by him while appellant was his wife, did the court err in view of the facts stated in said complaint, all of which are admitted by the demurrer? The answer to this question must be sought for and found by having recourse to the statutes of the territory and state of Utah, which are now in force, and such as were in force during the time stated in the complaint, so far as such statutes affected or fixed the rights of the wife in her husband's real estate. Some of the statutes upon that subject have been amended, and others superseded by the enactment of others from time to time. During all the time since the approval of what is known as the "Organic Act Establishing a Territorial Government for Utah," the common law has been in force in the territory and state of Utah.

That the same was put in force by section 17 of said act, the Supreme Court of the territory of Utah expressly decided in the case of *People v. Green,* 1 Utah 11.    The Constitution of Utah was adopted by the people on November 5, 1895, and Utah became a state by virtue of the proclamation of the the President of the United States on the 4th day of January, 1896.    By section 2 of article 24 of the Constitution, all laws of the territory of Utah then in force were continued in force until they expired of their own limitation or were regularly repealed.    The common law respecting dower thus remained in force all the time while Utah remained a territory, and continued in force after it became a state, except as modified by statutory enactment.    Such a modification took effect by virtue of an act passed by the territorial Legislature in February, 1872 (Comp. Laws Utah 1876, p. 342), in which act it was provided, among other things, that "no right of dower shall exist or be allowed in this territory." The common law upon the subject of the right of dower was thus abrogated.    In March, 1887, the Congress of the United States, by virtue of its legislative powers over territories, restored the common-law right of dower in the territory of Utah, in the following words:

"A widow shall be endowed of a third part of all the lands whereof her husband was seized of an estate of an inheritance at any time during the marriage unless she shall have lawfully released her right thereto."   (Comp. Laws Utah 1888, p. 119.)

If we concede that this act ceased to have any force when Utah entered into the Union as a state, we nevertheless cannot avoid the conclusion that, inasmuch as the statute of 1887 was declaratory of the common law only, it was tantamount to restoring the common law upon the subject of dower.    The law is well settled that, when the common law is abrogated by a statute, as was done by the statute of 1872, and such statute is expressly, or by implication, repealed, as was done by the statute of 1887, then the common law is again put in full force and effect.    This rule is well stated in section 294 of 1 Lewis' Sutherland Stat. Const., where the author says:

"The repeal of a statute which abrogates the common law revives the common law, even though there is a statute that the repeal of a repealing act shall not revive the act repealed. So the repeal of an act declaratory of the common law leaves the common law in force."

This text states the law as we believe it to be, and is, so we think, supported by the following authorities: *Mathewson v. Phoenix Iron Foundry* (C. C.), 20 Fed. 281; *Gray v. Obear*, 54 Ga. 231; *Lowenberg v. People*, 27 N. Y. 336; *City of Chippewa Falls v. Hopkins*, 109 Wis. 611, 85 N. W. 553; *Hanlon v. Partridge*, 69 N. H. 88, 44 Atl. 807. The law upon the subject of dower thus stood as above indicated until April, 1896, when the first state Legislature re-enacted the section of the congressional act of 1887 above quoted. Laws of Utah, 1896, p. 356, c. 118. The law of 1896 remained in force until the 1st day of January, 1898, when section 2826 of the Revised Statutes of Utah went into effect. Section 2826 for the first time departed from what is commonly designated "common-law dower," and what, for convenience, we have called and will call it in this opinion. At the time section 2826 went into effect, section 2832 also became effective in this state. Section 2826, so far as material here, reads as follows:

"One-third in value of all the legal or equitable estates in real property possessed by the husband at any time during marriage, and to which the wife had made no relinquishment of her rights, shall be set apart as her property in fee simple, if she survive him."

Section 2832 reads as follows: "There shall be neither dower nor curtesy in this state." The foregoing constitutes a brief history of the law upon the subject of dower in the territory and state of Utah from 1850, when the organic act went into effect, to the time of the death of John R. Park, the husband of appellant.

The contention between the appellant and respondents is based entirely upon the different views entertained by them respecting the effect to be given to the law in force at the death of the deceased, Park, in view of the foregoing history. Appellant contends that the congressional act of March, 1887, was declaratory of the common law merely, and thus that law

was in force in respect to dower until the territory of Utah was created into a state at which time the congressional act became dormant, and in this state the common law was at once revived; that the act of 1896 did no more than to declare the common law in force which would have been in force without that act, and thus the common law was practically in force all of the time from March, 1887, until January 1, 1898, when the Revised Statutes of Utah, 1898, containing section 2826, went into effect. The respondents contend that the common law respecting dower did not remain in force continuously from 1887, but that it was cut off when the territory of Utah was created into a state and so remained until April, 1896, when it was re-enacted. But they contend further that, if the common law of dower was in force during all of said time it was abrogated on the 1st day of January, 1898, when section 2832, which we have quoted, went into effect. Further, that section 2826 created a new right in favor of the widow and therefore cut off the common-law right as the same was prior to January 1, 1898; that, inasmuch as Mr. Park did not die until more than two years after the new law went into effect, his widow cannot legally be endowed out of the land alienated by him prior to the time the law of 1898 went into effect. It is conceded upon all sides that dower is a subject that is entirely within the control of the legislative power until it becomes vested by the death of the husband, and, until vested, the Legislature may modify, abrogate, increase, or diminish it at pleasure, at least as it affects the wife. It is further conceded that the right of dower is governed by the law in force at the death of the husand while the measure of the right is determined by the law in force at the time of the husband's conveyance where the wife did not relinquish her right. This, beyond peradventure, is the settled law, and we so hold. (14 Cyc. 887.) The question therefore is, did the Legislature by the adoption of the Revised Statutes of 1898, in which are contained both sections 2826 and 2832, entirely abrogate the dower right of the wife theretofore in force, and thereby create in its stead a new and independent right in favor of the widow?

It must be remembered that the adoption of the revised statutes had the effect, only, that a revision of laws usually has, which is now well settled in our jurisprudence. As to all laws upon any subject that are retained in the revision, whether in substance or form, the law so retained remains, notwithstanding that the old is repealed. The law upon this subject is well stated in 1 Lewis' Suth. Stat. Const. section 269, where the text is amply supported by the authorities. If we are right, therefore, in the conclusion that the common law giving the widow a dower right in her husband's lands was in force continuously from 1887 to the 1st day of January, 1898—and we think the authorities sustain our conclusion—then the only question that remains for solution is, was this right cut off by the adoption of section 2832 as part of the Revised Statutes of 1898? Section 2832 must necessarily be construed in connection with section 2826, and both of these sections must be given effect in the light of the preceding history of the law upon the subject to which they pertain. To do otherwise might lead us away from rather than to the true legislative intent. Section 2826, as we view it, did not create a new right. It simply enlarged a right that was continuous since 1887, when the common-law right of dower was reinstated in the territory of Utah. The law of 1896 created no new right. It simply was declaratory of the already existing right. The same prerequsites which gave and vested the right are necessary under section 2826 as were necessary at any time since 1887 and as are necessary under the common-law dower as the same is applied in most of the states of the Union, namely, marriage, seisin by, and death of, the husband. Moreover, the amount or quantity given to the widow is the same in the one as in the other. The only difference being the extent of its use. Under the law prior to the enactment of section 2826, the use was limited during the life of the widow, while, under that section, it is enlarged to a fee-simple estate. The one was limited, the other unlimited, and this is the only difference between the right prior to, and after, the enactment of section 2826. Again, the right not only is the same

in quantity—one-third—under the law prior to 1898, but it
is extended to the same class of lands, namely to all that the
husband owned during the marriage. It was, therefore, not
a creation of a new right, but simply an enlargement of a
then existing right as restated in said section. Both in the
new statute as well as the old one the common-law rule in
respect to the vesting of the right and the distribution thereof
has always been and must be applied. So far then, in view
of what we have said, there would not seem to be any great
difficulty in awarding the appellant her interest in lands
alienated by her husand subsequent to 1887 and prior to
January 1, 1898. But, as we have seen, section 2832 pro-
vides that "there shall be neither dower nor curtesy in this
state." This section, however, cannot, as we think, be con-
strued so as to make it apply to the right of dower as a
right. The right itself, as we have already pointed out, is
retained in section 2826. If it should be held that the right
was abrogated by section 2832, then it would be in direct
conflict with what is stated in respect to that right in section
2826. Happily a construction is not only possible, but, to
our minds, quite reasonable, which will give both sections
full force and effect. Since by section 2826 the widow's
right to a dower interest is not only retained but enlarged
and there defined, it became, and, in the minds of the revis-
ers of the law, undoubtedly was, unnecessary to longer retain
the terms of "dower" and "curtesy" as the designation of
that right. The estates and use of these terms were, therefore,
abolished, while the right itself was continued. Some mate-
rial light is obtained by a recourse to the difference in the
wording between the act of 1872 abrogating the right of dow-
er in the territory of Utah and of section 2832. In the act
of 1872 the right of dower is taken away, while, by section
2832, nothing is said about the right but it simply abrogates
dower and curtesy; that is, abolishes those estates and the
use or application of those legal terms in respect to the wid-
ow's interest. Quite true, if the right did not exist other-
wise in section 2826 the language employed in section 2832
might be sufficient to abolish the right. But when the right

is continued in force by another section, then, in order to harmonize the two, it is our duty to limit the one, if necessary to avoid a conflict with the other. If we do otherwise, then we must say that the Legislature intended to destroy a right given in section 2826 by what is said in section 2832.

The rule of construction we seek to apply is well stated in 2 Lewis' Suth. Stat. Const. section 376, where it is said:

"The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the Legisature apparent by the statute, and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. 'While the intention of the Legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words.' Words or clauses may be enlarged and restricted to effectuate the intention or to harmonize them with other expressed provisions. . . . The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they are found in the act."

In view that the Legislature was dealing with the subject of inchoate and contingent rights in adopting section 2826, is it reasonable to assume that while in the very act of enlarging the right it was thereby intended to destroy the lesser one then existing? Is it not more reasonable, in view of all the circumstances, that it was intended to continue in force the lesser right in respect to the past, while the enlarged right should apply prospectively. The Legislature could not make the enlarged right effective retrospectively. The Legislature knew the law in this regard, and made no attempt to ignore it. But neither was it attempted to cut off the right, and the Legislature is presumed to have known that, unless cut off in express terms, the lesser is included within the greater. To hold that it was intended to cut off the right altogether by section 2832 would, to our minds, lead to an absurd result. Assuming that A. and B. had alienated all of their lands after March, 1887, and prior to January 1, 1898, without their wives joining in their conveyances, or making relinquishment of their interest otherwise, what

would follow if the contention of respondents prevailed? Simply this: If A. had died on December 31, 1897, his wife would have received one-third interest in all his lands or the value of such third, while if B. survived till the 2d day of January, 1898—two days thereafter—his wife would have obtained nothing. If the law were made to bring about this result, however unreasonable it might appear to be we should cheerfully enforce it, but, until and unless it'is made to read so, we cannot, by a loose construction, aid in bringing about such a result. Neither do we think the Legislature intended that the law should be given such effect, or they would have said so in terms. But happily we are not wholly without authorities sustaining the construction we have adopted. It is also conceded that there is authority that is contrary to our views. We will now briefly review these authorities, referring to those sustaining our views first.

A brief outline of the history of dower-right legislation of the state of Iowa, so far as material here, may be stated as follows: By an act of 1852 common-law dower was restored in Iowa. In 1862 the right was enlarged to a fee-simple estate. In fact, section 2826, Revised Statutes Utah 1898, is taken from Iowa but was modified by the Legislature of Utah in minor details not material here. When the dower right was enlarged in 1862 in Iowa, the Legislature in the same act included the following words: "The estate by curtesy is hereby abolished." It seems the act continued in this form until the adopting of what is known as the "Code of Iowa of 1873," when the section passed in 1862 was substantially re-enacted with the words added as follows: "The estates of dower and curtesy are hereby abolished." Section 2440, Code of Iowa, 1873. We remark here that it will be observed that in Iowa the estates of dower and curtesy were abolished, while in Utah, by section 2832, it is provided that "there shall be neither dower nor curtesy in this state." In Iowa those two estates known by that name were abolished, while in Utah a fair construction, in view of the other sections upon the subject, would be that the use

of these terms only was abolished. But even under the law
as it stood in Iowa, which, for the purpose of this case, was
both in fact and law precisely as in this case, the Supreme'
Court of Iowa held that the enactment of 1862 enlarging the
widow's interest from a life estate to a fee simple did not
affect her rights in lands alienated by the husband prior to
the passage of that law although his death did not occur until
many years subsequent to this enactment. It was further
held that that portion of the section abolishing the estates
of dower and curtesy did not cut off the widow's right to an
interest in the lands of the husband so alienated by him.
Further, that the measure of her right in such alienated lands
was to be determined by the law in force at the time they
were alienated.   The Supreme Court of Iowa in *Moore v.
Kent,* 37 Iowa 22, 18 Am. Rep. 1, speaking through Mr. Jus-
tice Miller, clearly states the rules of construction applica-
ble to the statutes such as are in question here. The reason-
ing there seems not only forceful, but unanswerable when
applied to the subject-matter, which was precisely as it is in
this case. (*Purcell v. Lang,* 97 Iowa 610, 66 N. W. 886;
*Kendall v. Kendall,* 42 Iowa 464; *Felch v. Finch,* 52 Iowa
563, 3 N. W. 570.) There are other Iowa cases upon the same
subject, but as the foregoing sufficiently illustrate and sup-
port the reasons stated above we refrain from citing them.
The Indiana Supreme court, on the other hand, with both
the law and the facts substantially as they were in Iowa, and
as present in this case, arrived at an opposite conclusion as
is evidenced by the following cases: *Strong v. Clem,* 12 Ind.
37, 74 Am. Dec. 200; *Harrow v. Meyers,* 29 *Ind.* 469; *Bowen
v. Preston,* 48 Ind. 367; *Taylor v. Sample,* 51 Ind. 423; *Carr
v. Brady,* 64 Ind. 28. The difference, however, between the
Supreme Court of Indiana and that of Iowa is this: That,
while the Iowa court has consistently and persistently insisted
that its construction of the statute was the correct one, the
Indiana court has, by some members of that court, from first
to last doubted and criticised both the correctness and justice
of the construction adopted by the Indiana court. These
criticisms will be found in almost every case above cited

after *Strong v. Clem.* The construction, therefore, as urged by the Indiana court was continued under protest by the very court which first promulgated it, and was finally adhered to only because the matter had become *stare decisis.* The force of the Indiana cases is, therefore, greatly impaired if not wholly destroyed as binding authority upon the question involved here.

Respondents, however, cite and seem to rely on two other cases, viz.: *Hamilton v. Hirsh,* 2 Wash. T. 223, 5 Pac. 215, and *Morrison v. Rice,* 35 Minn. 436, 29 N. W. 168. Both of these cases, however, are readily distinguishable from the case at bar. In the Washington case the question presented was simply whether the Legislature could abolish dower in any event. The question was precisely as it would have been in the territory of Utah had it been presented after the law of 1872 went into effect and before the dower act of 1887 was passed. No one would seriously question that dower was abrogated in Utah between 1872 and 1887. The case from Minnesota presented the following question: After the husband had conveyed, and before his death, the Legislature of Minnesota abolished dower, and, in lieu thereof, gave the surviving widow a life estate in the homestead and one-third in fee of all other real estate of which the husband died seised. We thus have a case where the dower right was abolished and a different right substituted, and this was so declared in terms. Moreover, the Minnesota Legislature limited the wife's interest to lands of which the husband died seised, not, as in Utah, to all possessed by him during the marriage. If section 2826 were in terms like the Minnesota statute upon which the *Morrison Case* rests, we would have had no difficulty in agreeing to respondent's contention on this point. Neither of the cases last cited, therefore, is in point, and thus cannot be given any effect one way or the other.

From the foregoing it is manifest, and we so hold, that the right to the widow's interest in the lands of her deceased husband in Utah was continuous from 1887 to the present time; that the appellant has an interest in all the lands owned by the deceased and conveyed by him without her consent

during the time aforesaid; that such interest is to be measured by, and limited in, its extent to the law in force at the time of the conveyance by the husband; and that her right, not having accrued until the death of her husband on September 30, 1900, is not barred. The appellant, therefore, has a legal cause of action, and the court erred in sustaining the demurrer and in entering judgment dismissing the action. The judgment is reversed, the cause remanded, with direction to the court below to vacate the judgment of dismissal, reinstate the case, overrule the demurrer with leave to respondents to answer if they are so advised, and to proceed with the case in accordance with this opinion. Costs of this appeal to be taxed to respondents.

McCARTY, C. J., and STRAUP, J., concur.

ON REHEARING.

FRICK, J.

A petition for a rehearing has been filed in this case. While the petition conforms to neither the statute nor the rules of this court, we have nevertheless given it careful consideration. Our statement respecting the time when the value of the dower right is to be ascertained, as applied to this case, is criticised. The criticism, however, is based upon a case where the widow was allowed dower only in the lands of which the husband died seised. In such cases, as a matter of course, both the right and the measure thereof arises at the death of the husband. In cases, however, where the dower right attaches to lands conveyed by the husband during his lifetime, and the dower right has been enlarged by law between the time of such conveyance and his death, then the measure of the right is limited to the law in force at the time of the conveyance. The husband, under the law as it then stood, sold, and could sell, all save the wife's interest, and no law could, after such conveyance, enlarge this right as against the purchaser. The authorities cited by counsel in support of their contention recognize the principle above stated, but state the rule in a different form merely.

It is again strongly insisted that the Iowa cases cited by us in the opinion should be disregarded, and that the correct rule is stated in the case of *Richards v. Bellingham B. L. Co.,* 54 Fed. 209, 4 C. C. A. 290, which case, it is contended, overrules the Iowa cases. Counsel evidently have either carelessly read that case or failed to grasp its full import. At page 211 of the book referred to, in referring to the Iowa cases, Knowles, J., says:

"In the first three cases (referring to the Iowa cases) parties purchased real estate when there was a possibility, under the laws of the state, that there might be dower in the same to the extent of a life estate of one-third thereof. Burdened with this possibility the title to this real estate became vested in the purchaser."

Applying the foregoing statement to the case at bar, we find that in 1887 a dower right of one-third of the real estate owned by the husband was given to the wife by congressional act. In 1888, when the land in question was conveyed, there was, therefore, a possibility that the wife, the appellant here, might be entitled to dower therein contingent only on her continuing as wife and surviving her husband as his widow. Both of these contingencies have become fixed in this case. Suppose Thatcher, the purchaser from the deceased, Park, had at the time of the purchase of the land consulted counsel, and had informed them that the deceased, Park, was a married man with a wife living, that the deceased, however, would convey the land without her, and upon these facts had asked counsel's advice as to whether the title in such event was free and clear without the wife's relinquishment. What would they have told Mr. Thatcher? The answer is obvious; just what, no doubt, they have told many others, namely, that the title was incumbered with the possibility of the wife's dower. The *Richards Case,* however, went off upon the proposition that, at the time the conveyance was made in that case by the husband, the wife had no possible dower claim in the land. If the land in this case had been conveyed by the deceased, Park, in 1886, instead of 1888, then the *Richards Case* would be in point. In what appears to be not very good humor counsel again refer to the Minnesota case, and say

they cannot see any difference between that case and the case at bar. Let us again point out the distinction. Under the Minnesota law, at the time the decision in that case, the wife had a dower right in the lands, only, of which the husband died seised. The husband thus was empowered to bar her right by a conveyance during his lifetime. Not so in Utah. Here, since 1887, as we construe our laws, the husband could in no way affect the wife's dower right by his own act. In Minnesota the right was contingent, not alone on the death of the husband, but on whether he owned the land at the time of his death.

The question in regard to the construction of the different statutes in this state respecting the right of dower we will not discuss further. In this respect it is quite certain that whichever way we should hold there would still be those who, like counsel, would, with full confidence, assert that the holding should have been to the contrary. It is cheerfully conceded that arguments can be presented in favor of either view. We have carefully weighed these arguments and have examined all the available authorities, and have given the matter the consideration which its importance merits, and to the best of our ability. Where, as in this case, the rules of construction upon some features of the case point in opposite directions, we must, as we always shall, be guided by the fundamental principles underlying all law, namely, equity and utility, in arriving at a conclusion.

We are asked to say that the Legislature, in enlarging the right applicable to all future cases, without saying so in terms, destroyed the lesser one applicable to past transactions. We have no right to destroy rights by implication. The easy way out of the difficulty would have been to follow counsel's view. Had we followed our inclinations merely this would have been our holding. We chose, however, to follow what we conceived to be right and duty, rather than inclination. We, not counsel, must bear the responsibility. We do not hope to be always right, but when our conscience and judgment approve the result, we shall declare it, and cheerfully abide the consequences.

In conclusion we desire to observe that in all cases, and at all times, we court the criticisms of counsel. We desire to hear them, not as a matter of courtesy merely, but with the view of mutual benefit, and to the end that with their help right results may be reached. Much that counsel urge must be attributed to zeal, always pardonable, but not always to be heeded. Counsel, however, must not assume that when they refer to the "lucid intervals" of courts, whose decisions do not coincide with their views, that they are presenting either reason or argument. While it may be a relief to their feelings, it does not carry conviction to the judicial mind. If we are wrong, we want to have the errors pointed out, and, when convinced, shall cheerfully correct them. Counsel, however, have not convinced us of any errors in this case. There are, therefore, none to correct. The rehearing prayed for ought to be, and accordingly is, denied.

McCARTY, C. J., and STRAUP, J., concur.