THOMAS F. DALY, Plaintiff and Respondent, v. WILLIAM W. OLD and R. H. OFFICER, Defendants and Respondents, and W. MONT. FERRY, Defendant and Appellant.

No. 1935. Decided January 11, 1909 (99 Pac. 460).

1. CONTRACTS—CONSTRUCTION—MEANING OF LANGUAGE. General terms of a contract which, standing alone, extend the obligation beyond the subject-matter of the contract, must be strictly limited to the subject-matter. (Page 79.)

2. CONTRACTS—CONSTRUCTION—MEANING OF LANGUAGE. The language of a contract must be given its usual and ordinary meaning, unless clearly employed in a technical sense. (Page 82.)

3. CONTRACTS—CONSTRUCTION—MEANING OF LANGUAGE. Where the intention of the parties to a contract cannot be ascertained from the language alone, the court may have recourse to the circumstances. (Page 82.)

4. PRINCIPAL AND SURETY—CONTRACTS—OBLIGATION OF SURETY. The liability of sureties is not to be extended by implication beyond the terms of the agreement.[1] (Page 82.)

5. CONTRACTS—CONSTRUCTION—INTENTION OF PARTIES—MEANING OF LANGUAGE. The court in construing a contract may enlarge or restrict words or clauses which, if construed literally, would defeat the intention of the parties.[2] (Page 86.)

6. EVIDENCE—JUDICIAL NOTICE—GEOGRAPHICAL FACTS. The court will take judicial notice of the general scope and extent of the territory named in a contract employing an insurance agent to solicit insurance in the states of Oregon and Washington, and of the general history and number of inhabitants of the states, and of their general condition so far as the same is a matter of common or general knowledge. (Page 87.)

7. INSURANCE — AGENT'S BOND — CONSTRUCTION — "FUTURE AGREEMENT." A contract employing an agent to solicit insurance in the states of Oregon and Washington provided that the agent should give a bond for faithful performance "under this or any future agreement." The bond stipulated that it should remain

---

[1] Smith v. Bowman, 32 Utah 38, 88 Pac. 688, 9 L. R. A. (N. S.) 889.
[2] Hilton v. Thatcher, 31 Utah 370, 88 Pac. 20.

in force so long as the agent should continue to be agent, "whether under his existing appointment or any future one and whether such present or future agency" be sole or in connection with others. Subsequently the agent was made soliciting agent in the states of Utah, Colorado, and Wyoming. *Held*, that the sureties were liable for a breach of his duties in such subsequent employment; the term "future agreement" having reference to a future appointment. (Page 88.)

APPEAL from District Court, Third District. *Hon. T. D. Lewis,* Judge.

Action against sureties on bond. From a judgment for plaintiff, defendant W. Mont. Ferry appeals.

AFFIRMED.

*Messrs. Richards, Richards & Ferry* for appellant.

*Messrs. Snyder & Snyder* for respondents.

FRICK, J.

This is an appeal from a judgment against appellant entered by the district court of Salt Lake county.

The judgment is based upon substantially the following facts, as found by the district court: That on the 28th day of October, 1901, the respondent, Daly, appointed in writing one William W. Old as Daly's agent to solicit and procure applications for life insurance, and to perform such other duties in connection therewith as should be intrusted to said agent; that, under the original appointment, said Old was permitted to solicit and procure said applications within the territory of the States of Oregon and Washington; that thereafter, on the 10th day of November, 1901, the territory in which such applications were to be solicited and procured was changed from the States of Oregon and Washington to the States of Utah, Colorado, and Wyoming; that said Old acted under said appointment, and solicited and procured applications within the territory last above named and did not solicit or procure applications within the States of Oregon and Washington; that on the date first above named the said Old, as principal, and the appellant Ferry

and one R. H. Officer, as sureties, executed and delivered
to the respondent their obligation in writing, which, among
other things, contained the following conditions: "The con-
dition of this obligation is such that whereas the above named
bounden William W. Old has been, under an instrument
in writing of even date herewith and hereby referred to,
appointed by said Thomas F. Daly, manager, as his agent,
for the purpose of procuring applications for life insurance,
and performing such other duties in connection therewith as
may be entrusted to him: Now, if the said William W.
Old shall pay or hand over all moneys payable in any event
to Thomas F. Daly, manager, aforesaid, which shall at any
time be received by him, or for which he shall be account-
able or liable, whether the same shall be or shall have been
received by him personally and solely, or by, through, or
together with a copartner, coagent or other persons, including
all money so received prior to the date of this instrument
(if any such shall be), as well as those received thereafter;
as also all moneys which he now owes, or hereafter may owe,
said Thomas F. Daly, manager, aforesaid, on account of
advances made to him or otherwise, . . . and shall also
on the tenth day of each month hereafter account for, remit
and pay over to said Thomas F. Daly, manager, or his suc-
cessors, or whenever otherwise required so to do by said
Thomas F. Daly, manager, or his successors to his office,
all moneys due by him (not previously remitted and duly
accounted for) as such agent, less his commission and allow-
ances as expressly authorized by his written appointment,
or such other written instructions as he may receive, and
shall also, on the twenty-fifth day of each month make and
render to said Thomas F. Daly, manager, or his successors,
or whenever otherwise requested so to do, a full, just and
true account of said moneys and the sources from whence
they shall have been received, then this obligation shall be
void, otherwise to remain in full force and effect. It being
agreed and understood that this obligation shall not be an-
nulled or revoked without the consent of the above named

Thomas F. Daly, manager, aforesaid, but shall be and remain in force so long as said William W. Old shall continue to be the agent of said Thomas F. Daly, manager, aforesaid, whether under his existing appointment or any future one, and whether such present or future agency be sole or whether said William W. Old be joined with any other person or persons, and until all transactions under such agency shall have been finally adjusted and settled, and all liabilities of said William W. Old by reason thereof shall have been discharged, it is, however, expressly agreed that neither forbearance nor the extension of time for the payment of moneys due or to become due or failure to notify said sureties hereunder shall operate as a waiver of their liability, but that their liability shall continue as long as said Thomas F. Daly, manager, shall have a valid demand against said William W. Old." The court also found "that said undertaking was executed in consideration that plaintiff (respondent) would appoint defendant Old as agent within the States of Oregon and Washington, or for any other territory; . . . that the sureties intended when they executed the bond to become bound as sureties for the defendant Old under such new or additional appointment." The court also found that Old had defaulted; that the other surety on the bond had been released by reason of his death, and for a failure to file a claim against his estate, and that the bond was in force against Ferry; and that the sum of $1,413.33 was due thereon for which he was liable, and the sum of $2,827.46 for which Old was liable, and entered judgment accordingly, from which Ferry alone appeals.

Counsel in their brief state the errors to be reviewed by us as follows: "Objections were made to the sufficiency of the evidence, and to the sufficiency of the findings, all of which raise the sole question whether this provision in the bond was sufficiently broad in its terms to hold the sureties for a default of the principal, Old, in writing insurance in a territory not covered by the contract referred to. All other assignments of error, not being fatal to the plaintiff's

recovery on retrial, numerous though they were, are abandoned." It is asserted by counsel for appellant that, under the original contract, the defendant Old was appointed agent to solicit and procure applications for life insurance within certain specified territory; that this territory was abandoned, and the States of Utah, Colorado, and Wyoming substituted without the knowledge or consent of appellant; and that this constituted such a change or departure from the agreement upon which appellant obligated himself for the default of Old that it avoids the bond. In order to arrive at a correct conclusion, the provisions of the contract of appointment and the bond must be considered and construed together. As we view it, paragraphs 6 and 14 of the contract are the only ones that contain provisions which are material to a determination of the scope of the obligations assumed by appellant. Paragraph 6 is as follows: "It is agreed that the district within which said party of the second part shall have permission to operate is within the States of Oregon and Washington, but said district is not assigned exclusively to him." The fourteenth paragraph reads as follows: "It is agreed that said party of the second part shall keep deposited with said party of the first part a satisfactory bond for the faithful performance of all duties pertaining to his agency, and that said bond shall hold good under this or any future agreement." By referring to the sixth paragraph it will be observed that the territory in which Old is given permission to solicit applications for life insurance is specified to be within the States of Oregon and Washington. For the purpose of this decision, we will assume that within the purview of the clause in the original contract, now under consideration, the appointment of Old was a limited one so far as the territory in which he was to operate was concerned, although the clause does not in terms limit the appointment to those States, but simply gives Old permission to solicit insurance therein. If we now consider the language used in the two paragraphs quoted above in connection with what is expressed in the bond, what was the

intention of the parties with regard to the scope of the obligations assumed by appellant? Is it not as clearly stated as it well could be that a new or future agreement and appointment is permitted and contemplated? Is it not just as clearly expressed that the bond in question should apply to such future agreement and appointment? Up to this point, therefore, there cannot be any room for either construction or doubt.

But it is asserted that the agreement and appointment referred to were intended to be limited to some agreement or appointment operative within the States of Oregon and Washington only. By referring to the terms of the contract and bond, it will be seen that no such a limitation is therein expressed. If it exists at all, therefore, it must be implied. What is there in either the contract or bond from which such a limitation may be implied? It seems to us the parties have in terms provided against such an implication in view of the language contained in the fourteenth paragraph of the contract, and in further view of what is said in the bond itself. In the contract the particular agency for which the bond is to be in force is expressly stated. The agency there referred to is, and can be no other than the agency under which applications for life insurance were to be solicited, and such transactions as are naturally and necessarily connected therewith. This to our minds is clearly and unambiguously expressed. This being so, there is no room for the application of the doctrine that where general terms are used in any instrument which, if standing alone, would extend the obligation thereby assumed beyond the subject-matter of the contract, such general expressions must be strictly limited to the subject-matter of the contract. This is good law and good sense for the reason that the parties contracted and became obligated with regard to the business mentioned in the contract, and not with regard to matters pertaining to any and every kind of business or calling. To so construe general language in any obligation would be to extend the obligation

beyond the intention of the parties, and would bind when neither party at the time of entering into the obligation intended such a result. In this case, however, the parties have expressly provided that a future agreement and appointment with regard to soliciting applications for life insurance might be entered into, and, when entered into, the bond should cover such future agreement and appointment as well as the existing ones. This right is given in the most general terms without restriction or limitation of any kind.

In view of the right thus conferred upon Daly and Old, can it be said that they did not have authority to enlarge the duties and responsibilities of Old in the future agreement and appointment? The right to do this inevitably follows from the mere fact of being authorized to enter into a new or future agreement and to make a new appointment. While the future agreement and appointment in the contract was limited to a life insurance agency, as we have pointed out, it was not limited otherwise. If it be conceded, as we think it must be, that Daly and Old could change or modify the existing provisions and conditions of the old contract and appointment, or add new provisions, and thereby enlarge the duties and responsibilities of Old in the future agreement and appointment, as compared with the old one, how can it be reasonably contended that such enlarged duties and responsibilities should be limited to one thing rather than another so long as such conditions and responsibilities pertained to the agency expressly referred to in the contract? In what way did the fact of extending the territory in which Old might solicit affect appellant's obligation, except, perhaps, to enlarge Old's duties and responsibilities? A mere enlargement of the duties and responsibilities of Old could not affect appellant's right, because to do this was expressly authorized by him. We say this because the right to enter into a new or future agreement and to make a future appointment was expressly given. The agreement which was authorized therefore must have meant just what the term "future agreement" signifies,

viz., the right to formulate and agree upon terms and conditions when limited to the business of soliciting applications for life insurance, and the matters incident thereto; in other words, to the agency referred to in the fourteenth paragraph of the contract. In any contract or obligation the terms and conditions control and any change in any one of them, without the consent of all the parties thereto, if material, voids the agreement, because it no longer constitutes the actual agreement entered into. But, if a party to any agreement expressly agrees that he will be bound by any future agreement with regard to the subject-matter covered by the existing one, it is not easy to perceive why he should be bound by some, and not by all, of the provisions contained in the new agreement. If he wanted to' limit his liability, it was an easy matter to have expressed it in the agreement; but, not having done so, how can a court place a limitation upon one provision rather than upon another of the new agreement which was entered into with his consent? If in such a case he is bound by all of the provisions agreed to by him in the old agreement, why is he relieved from any that are contained in the new one, so long as the provisions of the new agreement relate to the business covered by the old one? To hold that appellant expressly authorized the future agreement and appointment, but that he is relieved from the new responsibilities imposed by the new agreement, is tantamount to holding that the same rule applies to the obligation in question as would apply to an ordinary contract or obligation where new duties are imposed without the consent of the party to be bound. Such a holding would in our judgment bo contrary to the express provisions of the contract and bond in question, and also to the law applicable thereto. The law undoubtedly relieves a party from any obligation not assumed by him, but it just as certainly enforces those that he has assumed. If in the first instance the law refuses to bind, it is because the party did not bind himself,

and in the second instance the law simply enforces that which the obligor promises or undertakes to do. If the courts should enforce the obligation in the first instance, it would be an act of injustice and wrong to the obligor. If it refused to enforce it in the second, it would amount to the same thing as against the obligee. The only thing, therefore, that the courts are concerned with is to ascertain the intention of the parties to any contract, and, when this is ascertained, the duty to enforce such intention admits of no escape. A primary canon of construction is to construe the language of the parties when applied to the subject-matter of the contract. The language used when applied to the subject-matter must be given its usual and ordinary meaning unless it is clear that certain words or terms are employed in a technical sense. If the intention of the parties cannot readily be ascertained from the language alone, then the court must have recourse to the situation, conditions, and circumstances which affected the parties, and from the language when considered in the light that those matters afford determine the real intention of the parties.

From hasty and careless expressions in the books it is sometimes assumed that a different and stricter rule of construction is applied to surety or indemnity contracts than to others. Neither principle nor authority support such an assumption. Mr. Justice Straup in the case of *Smith v. Bowman*, 32 Utah 38, 88 Pac. 688, 9 L. R. A. (N. S.) 889, has very clearly and tersely stated the general rule with regard to the application of such contracts in the following language:

"In determining the question, it is well to bear in mind that sureties are favorites of the law, and that their liability is not to be extended by implication beyond the terms of their contract. They are bound by their agreement and nothing else; and they have a right to stand upon the strict terms of their obligations."

It must be remembered, however, that the rule there stated applies to the application of the contract when the intention of the parties is ascertained, and not to the rule applicable in ascertaining such intention. The rules .of construction in ascertaining the intention of the parties are the same whether applied to one kind of a contract or another. (22 Cyc. 84.) This is well expressed by Mr. Justice Rumsey in the case of *Gamble v. Cuneo,* 21 App. Div. 414, 47 N. Y. Supp. 549, where it is said:

> "It is quite true that in one sense the contract of a surety is *strictissimi juris,* and it is not to be extended beyond the express terms in which it is expressed. This rule, however, is not a rule of construction of a contract; but a rule of application of the contract after the construction of it has been ascertained. Where the question is as to the meaning of the language of the contract, there is no difference between the contract of the surety and that of anybody else. In the case of a surety, as in the case of anybody else, when it becomes necessary to construe the contract, the usual rules are to be used, and it is to be interpreted like any other paper."

This case was affirmed in 162 N. Y. 634, 57 N. E. 1110. The authorities in support of this doctrine are stated in the opinion there, and need not be referred to here.

If we apply the foregoing rules to the contract and bond in question, it seems to us that there is no room for doubt that the parties, including appellant, intended to cover the acts set forth in the complaint in this case, and to which the trial court applied the bond. If the bond in question had simply in general terms referred to the contract of appointment, and had then stated that the obligor bound himself to indemnify Daly as against the wrongful acts of Old, as stated in the contract, we would have to look to the contract for the purpose of determining what Old was required to do, and the obligation would be limited to such acts. But the bond in question speaks for itself, and in apt terms states just for what acts appellant bound himself. Appellant had the right to enlarge upon the matters enumerated in the contract. The appointment of Old was

sufficient consideration for such an enlarged undertaking. But, apart from this, when appellant executed a bond to indemnify against the acts of the agent named in the contract, and in which the duties of the agent were specified, and in which it was further provided that the bond should cover any future agreement, then appellant bound himself by the terms of the future agreement, so long as the future agreement covered the business or agency referred to in the original contract. This is just what the parties expressed in the fourteenth paragraph of the contract. We therefore are not confronted with a case where nothing is said about what the future agreement shall cover. In this case the contemplated future agreement was limited to the business or agency of soliciting applications for life insurance only. The parties, therefore, fixed their own limitation; and since no other was expressed, what right have we to imply one? If nothing had been said in the contract with regard to what the future appointment should relate to, then, under the general rule that general expressions, however broad they may be, must nevertheless be limited to the things which constitute the subject-matter of the contract, would apply.

But how can such a rule be applicable when the contract expressly provides against it? All of the acts complained of are expressly covered by the bond. True, they arose under a future agreement and appointment, but they all come within the agency expressly referred to in both the contract and the bond. As we have seen, to extend the agency of Old to the States of Utah, Colorado, and Wyoming, in addition to those of Oregon and Washington, was no more than to enlarge upon the duties and responsibilities of Old, and the authority to do this was as clearly given as was the right to enter into a future contract and to make a future appointment, either or both of which the bond was intended to cover. To say that the future agreement and appointment was intended to be operative within the States of Oregon and Washington only not only robs the language

used of its full force and effect, but a limitation placed thereon would be unreasonable in view of the circumstances. By the original contract Old was permitted to operate in the States of Oregon and Washington. What reason, therefore, was there to enter into a future agreement or make a future appointment limited to those States only. So far as the record discloses, there was no reason for this whatever. The right to enter into any future agreement, and to make a future appointment in the absence of any limitation in the original agreement or in the bond, must, therefore, be held to mean just what it implies, namely, to make an agreement and appointment to solicit applications for life insurance in a place or places not already covered by the original agreement. No new appointment was necessary to authorize Old to solicit in Oregon and Washington. He had this right; but a new appointment and additional permission was necessary if his agency was to be extended to some other territory. Are we to say that the bond was to be limited to an appointment which was not necessary, but not to be extended to one which was necessary, if any new agreement or appointment was made? It is quite true that either Mr. Old or Mr. Daly might become dissatisfied with some of the other provisions of the original contract, and might have desired the right to modify or change them. But this is mere conjecture. It is just as likely that the place wherein permission was given to carry on the business of the agency would prove undesirable as that any other provision of the contract might do so. The right to change, extend, or modify any provision of the original contract was given, if any right was given at all. We therefore have no right to place a limit upon one of the obligations rather than upon that of another, all of which are contained in the contract, when the parties have not indicated by apt language, either in express terms or by necessary implication, that a limitation was intended.

But it may be suggested that, if it be held that the future agreement and appointment given extended the agency

of Old to the States of Utah, Colorado, and Wyoming, then it could for the same reasons be extended to France, Germany, China, Japan, or Africa, and the appellant would still be bound. The appellant had a right to so bind himself if he wanted to, and, if he did, the courts could not relieve him simply because it may seem unreasonable for him to do such a thing in advance. It is easy at times to be led away from the real question by having recourse to extreme cases as illustrations for the purpose of applying well-known legal principles. But the suggestion is not such that cannot be answered. One answer is that we have no such a case before us at this time. Another answer is that the thing suggested would not necessarily follow, even though we gave full scope and effect to the language employed in the contract and bond before us. As we have seen, in arriving at the intention of the parties to any contract, the surrounding circumstances and conditions by which the parties are affected are always to be considered. These matters may be made to appear by proper evidence,. and from the language used, when considered in the light of the matters referred to, the real intention of the parties must be ascertained, and it would not be assumed that they intended a future agreement and appointment to apply to conditions and circumstances entirely foreign to and different from those surrounding them and which affected the contemplated business concerning which they were contracting. It frequently occurs in arriving at the true meaning of language used in a statute, and of the real intention of the Legislature in using it, that courts must give words, phrases, and even clauses either an enlarged or restricted meaning, so as to make the law conform to the real intention of its authors, as the same is gleaned from the whole law or statute. This is, if possible, more often the case with regard to written contracts. The ordinary meaning of certain language must in some instances be enlarged, and in others restricted, so as to make the contract when considered as a whole conform to the real and manifest intention of

the parties, notwithstanding that the literal meaning of a word, phrase, or clause, when considered by itself, would be given a different meaning. (2 Lewis' Suth. Stat. Const., sec. 376; *Hilton v. Thatcher,* 31 Utah 370, 88 Pac. 20.) In view of this rule, any court might thus be justified in holding that foreign countries were not, and could not have been, within the contemplation of the parties, and that it was not their intention to cover them, or any one of them, by the terms used in the agreement. If, therefore, it were manifest that such was not the intention of the parties, then the court would hold it not their contract, and hence would not enforce it as literally written. But would it not be somewhat unreasonable to contend that, because certain language used was not intended to apply to the whole world, therefore, it was not intended to apply to any part of it outside of the particular place where the contract was made? We take judicial notice of the general scope and extent of the territory named in the contract, and to which the appointment applied, and of the general history and the number of inhabitants, and of their general condition, so far as this is a matter of common or general knowledge. Are the conditions prevailing in Utah, Colorado, and Wyoming so different from those existing in Oregon and Washington that it may be assumed that the parties because of such difference did not intend to extend the agency of Old to those states? We think not. There is nothing in the conditions, therefore, from which a limitation could be implied.

The only ground, therefore, upon which a limitation can rest, is that the scope of Old's duties and responsibilities was enlarged, and that, therefore, the appellant's obligation should not be extended to such new duties and responsibilities. If appellant had so limited his obligation, either in express terms or by language from which such a limitation could reasonably be implied, then he could not have been held upon this bond. He did not do so; but, upon the other hand, there are numerous expressions in the bond which

clearly forbid us to make such a limitation without disregarding the ordinary rules of construction and doing violence to the ordinary sense to be imputed to the language used. In dealing with this question we have considered the term "future agreement," as used in the contract, as referring to a future appointment, which is referred to in the bond. We think that to do this is not only permissible but is necessary in view of the circumstances. The contract was executed first, and the bond expressly refers to the contract. In the bond it is said that the bond shall remain in force "whether under his [Old's] existing appointment, or any future one." This was a construction by the parties themselves of what was meant by the term "future agreement" used in the contract. Appellant is bound by this construction, and therefore must be held to have consented to a future agreement and appointment. The future appointment, therefore, must have been intended to be other than the existing one, but with reference to the business of soliciting applications for life insurance. That it was limited to an agency for that purpose only is made clear in the fourteenth paragraph, wherein it is said that the bond should be given for the "faithful performance of all duties pertaining to his [Old's] agency, and that it should hold good," etc. This, thus, was a limitation only with regard to the business intrusted to the agent, and not upon the duties and responsibilities that might be imposed under a future agreement and appointment.

We are not unmindful of the rule invoked by counsel for appellant and as illustrated in the case of *Singer Mfg. Co. v. Hibbs*, 21 Mo. App. 574. In that case the territory for which the agent was appointed was clearly defined, and no right was there given to extend the scope of the agency. Under such circumstances, the court in that case properly held that the bondsmen were not liable for the defalcations of the agent occurring in some other place than the one for which he was appointed. Under such circumstances, the bond is limited to the place or territory for which the agent

is appointed as well as to the acts contemplated by the appointment. Not so in this case. A future agreement and appointment are expressly provided for. It would, therefore, be just as unreasonable to say that the bond in question does not extend to the acts occurring under the future appointment, as it would have been to have held in the Hibbs Case that the bond in question in that case did so extend. While counsel for respondents have not cited any case, and we have found none, which is exactly parallel in its facts with those of the case at bar, we nevertheless think that the following cases cover and are decisive of the principles involved and which we have discussed: *N. Y. Life Ins. Co. v. Hamlin,* 100 Wis. 17, 75 N. W. 421; *Singer Mfg. Co. v. Reynolds,* 168 Mass. 588, 47 N. E. 438, 60 Am. St. Rep. 417; *Trav. Ins. Co. v. Stiles,* 82 App. Div. 441, 81 N. Y. Supp. 664; *Western N. Y. Life Ins. Co. v. Clinton,* 66 N. Y. 326. All of the foregoing cases except the last one relate to indemnity bonds where the right was given to make changes in the original contract of appointment, or to make a new agreement or appointment. In view of such a right being given, it is held that the obligations of the bond extended to the acts under the new agreement or appointment. It is clearly held that, where the right is given to enter into a future agreement or to make a new appointment, it makes no difference that the responsibilities and duties of the agent are enlarged under the new appointment. The bond, it is held, applies to the acts under the new agreement or appointment to the same extent as it did to those of the original agreement or appointment. Every question was involved in those cases that is involved here except the change of territory, but, as this change of territory can involve nothing except an enlargement of the duties and responsibilities of the agent Old, there is no escape from the conclusion that the cases referred to above are decisive of the principle which is involved in this case.

In considering all of the terms of the contract and bond in question, we are clarly of the opinion that the parties

intended to extend the bond to the acts of Old which are involved in this case, and that the trial court committed no error in its findings,. conclusion, and judgment.

The judgment is affirmed, with costs to appellant.

McCARTY, J., concurs, and STRAUP, C. J., in result.